# Wolf and Schoening *versus* The City of Philadelphia.

1. The City of Philadelphia has the undoubted right to impose the burden of merely local improvements (such as the construction of sewers) upon the property of those immediately benefited thereby, to the extent of the benefits conferred. Such a burden is a species of taxation, and the remedy for its collection, as against the property charged, is a proceeding in rem and not in personam. The property itself and not the owner is debtor to the city for the amount of the charge.

2. A city contracted for the construction of a sewer, the contractor agreeing to accept in payment for his work, the assignment to him of certain of the assessment bills against the properties benefited, the remainder whereof were to be retained by the city. After the completion of the work, but before any assessment bills had been assigned to the contractor by the city, he received from A., a certain property owner, the full amount of the assessment against the latter's property, giving him a slip-receipt, wherein, by mistake, the payment was specified to have been made on account of premises in a totally different locality. A settlement having subsequently taken place between the contractor and the city, the former sent to A., as a further receipt, a duly authenticated department bill receipted by him and the proper city officials, made out in A.'s name, but for other premises situated in the same square, which A. did not own. Among the bills retained by the city was one against A.'s premises rightly described, but which was made out in the name of A.'s vendor, although the deed to A. was registered in the Registry Bureau. A municipal claim, based on this last mentioned bill, was afterwards filed against A.'s premises, naming his vendor as owner, and a scire facias issued thereon, A. being subsequently suggested as the "present and actual" owner.

  *Held,* that there was a perfect defence to the claim; that it was competent for the defendant to show the mistake in the receipts delivered to him as to the situs of the property. And further, that the city could enforce its claim as against the premises, a description whereof had, by mistake, been inserted in the receipted bill delivered to A.

  *Semble* that A. might have availed himself of the registry of his deed in the survey department as a defence to the lien: inasmuch as under the Act of March 14, 1865, and its supplement of March 29, 1867, the fact of registration requires that the property shall be charged and pursued in the name of the registered owner.

[Wolf v. The City of Philadelphia.]

January 10th and 11th, 1884. Before MERCUR, C. J. GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1 of *Philadelphia county :* of January Term 1883, No. 209.

Scire facias sur municipal claim, by the city of Philadelphia against William Wolf for $60, being an assessment for building a sewer against property situate on the north side of Fourth street in the city of Philadelphia. By writing filed the same day the writ was issued Jacob Schoening was suggested as the "actual and present owner" of the premises.

On the trial the following facts appeared : Jacob Schoening, one of the defendants, was the owner of property numbered 849 and 851 North Fourth street, which had previously belonged to William Wolf, the other defendant, and had come into Schoening's possession by a sheriff's deed wherein the lot was described simply as a forty foot lot on the "east side of Fourth Street between Brown Street and Poplar Lane." This deed was duly registered, and accompanying it was a draft or plot giving the dimensions and locality of the premises accurately and correctly. Schoening owned no other property on North Fourth street, and it did not appear that Wolf had ever owned any other.

In 1875 the city built a sewer on North Fourth street, between Brown and Beaver streets, and awarded the contract therefor to Joseph Conklin. By its terms he was to be paid in assessment-bills, made out against the properties on the line of the sewer by the proper city officers and assigned to him.

As soon as the sewer was completed, and before any bills against the property owners had been assigned to Conklin, on application of Schoening, who wished to make immediate connection with the sewer, Conklin collected from him $60, the amount of Schoening's assessment, and gave him a receipt "for the construction of a sewer in front of premises 741 North Fourth street." This property was not owned by Schoening, but was situated in a different square from his premises, upon which he had paid the $60 as above. Conklin accompanied this receipt with a verbal promise that in a few days he would deliver a department receipt for the money.

Upon the following day the city had a settlement with the contractor, and assigned to him among other bills, one which Conklin receipted, and when properly endorsed, transferred to Schoening, which read as follows :

"PHILADELPHIA, *October* 5, 1875.

MR. JACOB SCHOENING TO CITY OF PHILADELPHIA, *Dr.*

For forty feet　　inches of sewer laid in front of property

situate on east side of Fourth street, 355 feet $5\frac{1}{2}$ inches north of Brown, at $1.50—$60.

Received payment,

Jos. Conklin.

Correct.

Sam'l L. Smedley,
*Chief Engineer and Surveyor.*

Which bill was endorsed as follows:

The amount of this bill is payable to Jos. Conklin, and if the same be not paid within thirty days from the date of delivery a claim may be filed for the same.

John L. Hill,
*Chief Commissioner of Highways.*
Thos. Gilligan,
*Assistant Commissioner, Second District."*

It appeared, however, that Schoening's lot, instead of being 355 feet $5\frac{1}{2}$ inches north of Brown street, as specified in the receipt, was 435 feet $5\frac{1}{2}$ inches north of Brown, or 180 feet south of Poplar street.

Among the bills retained by the city as part of the surplus, after the contractor had been paid the amount specified in his contract, was one in the name of William Wolf for property situated 180 feet south of Poplar street. Upon that claim this scire facias was issued; first against William Wolf, Schoening being subsequently suggested as "actual and present owner."

These facts being shown, the court instructed the jury that no defence had been made out, and therefore directed them to find a verdict for the plaintiffs.

Verdict accordingly, for $85.36, and judgment thereon. Whereupon the defendants took this writ, assigning for error said instruction of the court.

*Albert T. Goldbeck,* for plaintiffs in error.—The frontage charge for building a sewer, like all claims for local improvements, "is a species of taxation." Hammett v. Philadelphia, 15 P. F. S., 146. This sewer claim was not a claim in rem against a particular property, irrespective of the question of ownership. Olive Cemetery Co. v. Philadelphia, 12 Norris, 129. Conkling was fully authorized to receive this tax. Ordinance of May 12, 1866, sec. 4. (Dig. of Laws and Ordinances, p. 162, pl. 88.) Since it was a question of taxation it was immaterial what was in the receipt, the misdescription was controlled by the facts. Koch v. Dunkel, 9 Norris, 264; Russell

*v.* The Church, 15 P. F. S., 9.    Besides, if Wolf is indebted to the city, the claim can be amended so as to be a lien against his property.    City *v.* Wagner, 9 W. N. C., 511.

*Abraham M. Beitler* (with whom was *William Nelson West*) for the defendants in error.—The city is given the right to construct sewers, and to charge therefor so much per foot. When the sewer is finished the money is due her.    She has by ordinance provided that bills against the properties, being choses in action, shall be used to pay the contractor for building sewers by being assigned to him as cash.    In case of such assignment, he collects from the property owner, not because he built the sewer, but because he is the assignee of the city, and her agent to collect the bill.

The mere fact that Conklin in the present case built the sewer along Fourth street in front of 851 North Fourth street, gave him no right to collect any money from the property owners.    The city owed him, not the property owners.    When the city paid him in bills against some of the properties on the line of the sewer, then he became the city's agent and assignee to collect those bills, but only those.    When Conklin called on Mr. Schoening and collected from him $60, the city had absolutely nothing to do with the transaction.    Mr. Schoening's *property* then owed the city $60, and the city had given no one any authority to collect it for her.    The payment to the contractor was undoubtedly no payment to the city.    The court below was correct in holding that a sewer claim is a lien in rem against a particular property irrespective of the question of ownership.    Delaney *v.* Gault, 30 Pa. St., 63; Wistar *v.* The City of Philadelphia, 5 N., 215; Emrick *v.* Dicken, 11 Id., 78, and White *v.* Ballantine, 15 Id., 186.

The bill against property 355 feet 5½ inches north of Brown street (the lot which did not belong to Mr. Schoening, but the charge against which he paid) was made out against Jacob Schoening.    The bill was thus made out by the District Surveyor for whose mistake the city is not liable.    Alcorn *v.* Philadelphia, 8 Wr., 348.

Mr. Justice CLARK delivered the opinion of the court, February 4th, 1884.

The city of Philadelphia in the year 1875 built a sewer on that part of North Fourth street between Brown and Beaver. The contractor was Joseph Conklin; who agreed to accept from the city assessment bills, endorsed by the Commissioner of Highways, as cash paid upon the contract; which bills he agreed to collect at his own cost, without recourse to the city in any event.    The contractor had the right to use the name

of the city and to employ all remedies or proceedings, whether of lien or otherwise, to which the city was competent, in their collection.

Schoening was at the time the owner of the premises No. 851, on the line of the sewer, having a frontage of forty feet on North Fourth street. His title was evidenced by a sheriff's deed duly registered, in which the lot was described as being " On the East side of Fourth street, between Brown street and Poplar lane." The charge for the construction of this sewer was fixed by an ordinance of the councils at $1.50 per foot. There can now be no doubt as to the right of the city to impose the burden of merely local improvements upon the property of those immediately benefited thereby to the extent of the benefits conferred. This principle has been well established in a long line of cases to which it is unnecessary to refer. Such a burden is a species of taxation, and the remedy for its collection as against the property charged is certainly a proceeding *in rem* and not *in personam*. The property itself, and not the owner, is debtor to the city for the amount of the charge.

We can see no reason however, why the defendant below might not have availed himself of the registry of his deed in the survey department as a defence to the lien. Since the Act of 14th March, 1865, and the supplement thereto of 29th March, 1867, the fact of registration requires that the property shall be charged and pursued in the name of the registered owner; and as there accompanied the deed a draft or plat which gave the dimensions and locality of the premises, it was improperly charged in any other name than that of Schoening. Although the deed was not exact in its description of the property, its recitals were explained by the draft. The Registrar of the survey department, who was a witness at the trial, upon examination of the draft said without hesitation that it corresponded with the actual location of lot 851 North Fourth street in the plan of the city. It is admitted that Schoening owned no property on Fourth street other than the property charged with this lien; and it does not appear that William Wolf owned any property on that street or any other. The use of Wolf's name in connection with the ownership of No. 851 was altogether unwarranted by anything which appears in the evidence.

But we think the defendant established a good defence by proof of actual payment prior to the entry of the lien, and that the court erred in charging the jury that the verdict should be for the plaintiff. At the completion of the sewer Schoening desired to have a license to make connection with it from his own lot, but he was informed by Conklin that this could not be done until he had made contribution to its con-

struction by payment of the price at the rates stated. Schoening then paid to Conklin the face amount, and took his receipt for it, and we presume that the connection was made. Assuming the authority of Conklin to receive the money, the payment was not in any general form, it was specific; it was in discharge of the claim which the city had upon the lot Schoening owned; the lot which he wished to have connected with the sewer. We cannot in the very nature of the case mistake the intention of the defendant as to the particular lot to which that payment was applied. It is not the case of a payment of money, applied by direction of the payor to one debt which he subsequently discovered he ought to have applied to another; the claim Schoening intended to pay he did pay; the premises which Conklin by receiving the money intended to discharge, he did discharge. The whole difficulty arises out of the unfortunate expression of the receipt which was given. This receipt is dated October 4th, 1875, and in it the money is stated to have been paid " for the construction of a sewer in front of the premises 741 North Fourth street." This was a clear and palpable mistake. The " premises 741 North Fourth street," were not situated between Brown and Beaver streets, but in another block; they were not on the line of the sewer at all, and Mr. Schoening neither owned them nor pretended to own them. A receipt is but an acknowledgment, and like any other acknowledgment is open to contradiction or explanation and correction; it is not a contract inter partes. Jones *v.* Patterson, 1 W. & S., 321; Batdorf *v.* Albert, 9 P. F. Smith, 59. This receipt was an acknowledgment of the receipt of the money, and if it appeared that it did not properly disclose the intentions of the parties, the subject was susceptible of other proof; it does appear that the money was paid and received in discharge of the premises 851 instead of 741 North Fourth street; the receipt is palpably erroneous, and becomes unimportant.

But it is said that Conklin had no authority from the city, on the 4th October, 1875, to receive the money. This is perhaps true, and therefore Conklin agreed that, in a few days, he would deliver to Schoening a department receipt for the money. On the next day the contractor obtained an assignment of the assessment bill against Schoening from the Chief Commissioner of Highways and his local assistant, and, having receipted it, delivered it to Schoening in accordance with his previous promise.

The sheriff's deed was in evidence, but we are not furnished with a copy. It was stated in the argument, however, that the premises therein described had been sold by the sheriff as the property of William Wolf, who was owner thereof prior

[Burkholder's Appeal.]

to the sale. The certificate of registration endorsed thereon implies that the sheriff's conveyance, "with the precise dimensions and locality of the premises," was duly reported to the Registry Bureau, and that the fact of the transmission of the title from Wolf to Schoening was properly noted in the plans of the city on file in that department.

It was the Wolf lot which Schoening owned, and that fact thus appeared in the survey department upon exhibition of the sheriff's deed. Schoening owned no other, and the city had no other valid claim against him which it could assign to Conklin. The assessment bill, in its description of the premises, was manifestly a mere blunder, for which the city was responsible. Schoening had a right to assume not only that the bill conformed to the registry, but that the registry was correct. It was for the protection of the property holders, in part at least, that registration of deeds was required, and they have a right to assume that assessments of taxes, or other municipal claims, are made in accordance therewith.

The defendant below, by this blunder, which was from no fault of his, has been subjected to an expensive, protracted, and useless litigation. It is very clear that he paid the money in relief of his lot, No. 851, although the lot correctly described in the assessment bill transferred was lot No. 841 North 4th street. It was so received by the contractor. The bill was intended to cover the lot which Schoening owned—the Wolf lot—the deed for which was registered. The contractor so regarded it when it was assigned, and having entered a receipt upon it sent it to Schoening upon the footing of the previous payment. This receipt was no discharge of lot No. 841, because the payment was not made for the charges against that lot. It was perfectly competent for the city to have proceeded against Lot No. 841, and the receipt, if produced, was susceptible of a clear explanation. The loss, if any has been sustained, is the loss of the city.

The judgment is reversed, and a venire facias de novo awarded.