## Frick *v.* Shimer, Appellant.

*Executors and administrators—Loan to estate—Receipt evidence—Question for jury.*

An executor who borrows money for the estate of the decedent may bind himself personally for the repayment of the money if it is not used as agreed at the time of the loan.

Where a check is indorsed over to an executor as such and four days thereafter the executor receipts for it as a loan to the estate of the decedent, parol evidence may be admitted to show that the money was to be returned if it was not used for a particular purpose, and if the executor denies this, and alleges another purpose than that stated by the lender, the case is for the jury.

Argued Oct. 19, 1904. Appeal, No. 124, Oct. T., 1904, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1903, No. 3,707, on verdict for plaintiff, in case of Charles V. Frick v. John N. M. Shimer. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for money loaned.   Before BEITLER, J.
The facts appear by the opinion of the Superior Court.

The court charged in part as follows :

[Now, on April 10, when this young gentleman turned over
the $1,200 to Mr. Shimer there were no writings took place
between them at that time, excepting that as that $1,200 was
a payment to the plaintiff out of his grandmother's estate, of
which Mr. Shimer was her administrator, the young man gave
Mr. Shimer a receipt showing that he had received that money
from him as administrator, closing out the account between
the young man and his grandmother's estate.   Mr. Shimer at
that time said, " I will send you a receipt for this," and in four
days he did send a receipt, in which he said :

"PHILADELPHIA, PA., April 14, 1902.

" Received of Charles Vesey Frick, the sum of twelve hun-
dred dollars ($1,200.00), the same being a loan to the estate
of Horace E. Frick."

Now, in point of fact, that receipt does not fit in with either
side of the case.   If it had been written in strict accord with
what Mr. Shimer contends to have been the bargain, then it
would have said, " To reimburse me for moneys paid by me to
Smith, and these other two parties, which claims I now hold,
and which I hold now for the use of Mr. Frick."   It does not
correspond with what Mr. Frick said was the bargain, because
if it did, it ought to have said, " To be held by me to incorpo-
rate the Frick Company, and to be returned if I do not get a
contribution from Mr. Frick's grandmother and aunt."

In my judgment, it has but little bearing upon the case, be-
cause it was not the thing upon which the money passed; it
was Mr. Shimer's statement of the case four days after he got
the money.   It is like the handle of a jug, it is all on one side.
It bears against the plaintiff only in this : That he kept it
without saying anything at all about it.   It was a receipt, and
nothing more than a receipt.   It was the truth so far as it
stated that Mr. Shimer had received from Mr. Frick $1,200.
It may be the truth, if you find in favor of the defendant's
contention, that it was a loan to the estate, and Mr. Shimer
may have meant by that that the money was a loan in the

sense that it was a reimbursement to him for what he had paid, and in accordance with his contract with the plaintiff; at any rate, it does not seem to me to be conclusive one way or the other. It will go out with you, and you will give it what weight you think it ought to have as an index as to what was the understanding at that time between the parties.] [2]

[Mr. Erdman has called my attention to the indorsement on the check today. Give that such weight as you think it ought to have in determining upon which side is the truth with regard to this controversy. Unfortunately, you have the plaintiff and his brother consistent in their stories, and emphatic in their statements that the interview at which the bargain was made took place in West Philadelphia on April 10, and that it was as stated by the plaintiff; on the other side you have Mr. Shimer's statement that it did not take place in West Philadelphia, but took place in his office, and it was not as stated by the plaintiff, and he is backed in that to some extent by the recollection of his bookkeeper, who was a little more emphatic in his examination in chief than he was on cross-examination as to his recollection. At any rate, the credibility of witnesses, and the weight to be given to their testimony is entirely for you and not for me.] [3]

Verdict and judgment for plaintiff for $1,349. Defendant appealed.

*Errors assigned* were (2, 3) above instructions, quoting them; (4) in refusing binding instructions for defendant.

*Preston K. Erdman*, with him *J. McGregor Gibb*, for appellant, cited: Jessop v. Ivory, 158 Pa. 71; Steamboat Co. v Brown, 54 Pa. 77; Dale v. Evans, 14 Ind. 288; Coon v. Knap, 8 N. Y. 402; Lodge v. Heron, 3 Phila. 356; Sachse v. Myers, 15 Pa. Superior Ct. 425; Allen v. Graffius, 8 Watts, 397; Hollenback v. Clapp, 103 Pa. 60.

*Henry M. DuBois*, for appellee, cited: Geyer v. Smith, 1 Dall. 347; Grier v. Huston, 8 S. & R. 402; Jones v. Patterson, 1 W. & S. 321; Moore v. Commonwealth, 8 Pa. 260; Bell v. Bell, 12 Pa. 235; Grove v. Donaldson, 15 Pa. 128; Horton's Appeal, 38 Pa. 294; Batdorf v. Albert, 59 Pa. 59; Russell v.

First Presbyterian Church, 65 Pa. 9; Shoemaker v. Stiles, 102 Pa. 549; Wolf v. City of Philadelphia, 105 Pa. 25; Masterson v. Masterson, 5 Rawle, 137; Seip v. Drach, 14 Pa. 352; Corr's Estate, 8 Pa. Dist. Rep. 209.

OPINION BY MORRISON, J., November 21, 1904:

Defendant was executor of plaintiff's father, Horace E. Frick, deceased, and the administrator of Emeline Vesey, deceased, plaintiff's grandmother. Plaintiff had an interest in both estates. On April 10, 1902, defendant paid to plaintiff, soon after he had reached his majority, on account of the latter's share in the estate of Emeline Vesey, deceased, $1,200, by check which plaintiff at once indorsed, "Pay to the order of the estate of Horace E. Frick, Charles Vesey Frick," and handed the check back to the defendant. At the time plaintiff gave to defendant, as administrator, a receipt for the said $1,200, on account of his share in the Vesey estate, and defendant promised to send plaintiff a receipt for the check so indorsed and delivered to the defendant. On April 14, 1902, defendant sent by mail to plaintiff a writing as follows: "Philadelphia, Penna., April 14, 1902. Received of Charles Vesey Frick the sum of twelve hundred dollars ($1200), the same being a loan to the estate of Horace E. Frick, J. N. M. Shimer."

Plaintiff received this paper in due course of mail and retained it. Subsequently the plaintiff demanded a return of the money and this being refused he brought this suit, in assumpsit, and declared against the defendant for the said sum of $1,200, "which plaintiff loaned to defendant on or about April 10, 1902, which said loan was made under the following circumstances, to wit: "Plaintiff's father, Horace E. Frick, died leaving a will whereby he appointed the said defendant as his sole executor, and that at the time of decedent's death he was a member of the firm of Horace E. Frick & Company engaged in the business of selling castings and steel boilers," etc. "That the plaintiff loaned the said sum of $1,200 to the said defendant, to use the same in carrying on and incorporating the said business in which plaintiff's father was engaged at the time of his death, provided, however, that the plaintiff's grandmother, Rebecca E. Frick, and plaintiff's aunt, Mrs. Hibbert P. John, each loaned the defendant a like amount

for that purpose.   That as an evidence of said loan the said defendant gave to the plaintiff an obligation or receipt in writing, of which the following is a copy : "   (Here follows a copy of the receipt above quoted).

The declaration then avers in plain terms "that the plaintiff's said grandmother and aunt subsequently refused to loan the defendant any money for the purpose aforesaid, and the said business was not incorporated, but was sold by the executor at public sale, and thereupon plaintiff demanded of the defendant the payment of the said sum of $1,200 to him, which the defendant refused to pay, and still refuses to pay the same, notwithstanding the fact that the defendant had promised to repay the same to the plaintiff."   The declaration further avers that the defendant is justly owing the plaintiff in his individual capacity for the said sum of $1,200, and that no part of it has been paid, etc.

In his affidavit of defense and testimony the defendant admitted the receipt of the money but denied that it was received for the purpose named by the plaintiff and averred an entirely different contract.

Upon the trial the whole question was whether the plaintiff was correct in his contention or was the transaction as set up by the defendant in reply to the plaintiff's claim.   The learned court submitted the question of fact to the jury in a charge which is entirely fair unless it is open to criticism as to what was said in regard to the receipt of April 14, 1902.

A careful examination of the testimony leads us to the conclusion that it strongly sustained the plaintiff's contention that he loaned the money to the defendant, substantially as stated in his declaration, and that before the suit was brought the contingency had arisen which entitled the plaintiff to have the money returned to him.   But the court fairly submitted the defendant's theory to the jury and plainly said in the charge that if the money was turned over to the defendant on the terms contended for by him, then the plaintiff could not recover.

Defendant strongly contends that the plaintiff's theory is in direct conflict with the terms of the receipt of April 14, 1902, and the plaintiff's indorsement on the back of the $1,200 check, which he delivered to the defendant.   But we cannot

agree with this contention. The indorsement and receipt are not clearly inconsistent with the plaintiff's claim that the money was advanced for a special purpose, and if not used for that purpose, it was, in effect, a loan to be returned to the plaintiff. Now, assuming that the defendant had no authority, as executor, to borrow money on the credit of the estate of Horace E. Frick, it follows that he may have bound himself personally for the repayment of the money, provided it was not used as agreed at the time of the loan : Geyer v. Smith, 1 Dallas, 347 ; Grier v. Huston, 8 S. & R. 401 ; Seip v. Drach, 14 Pa. 352 ; Fehlinger v. Wood, 134 Pa. 517 (see p. 522).

All of the assignments of error are based on the treatment, by the court, of the receipt and the indorsement on the check. In our opinion this receipt is not so clear and definite, upon its face, that parol evidence could not be introduced to enable the jury to get at the real transaction between the parties. We do not discover any serious error in the charge of the court contained in the several assignments of error. Nothing shows clearer that the receipt and indorsement require parol evidence to show the real contract between the parties, than the fact that the parties themselves and their counsel, have never yet been able to agree as to the meaning of the writings. Moreover the indorsement and receipt are not so clear that a court can say, as matter of law, just what the contract was. In addition to this the receipt was not made for four days after the check was indorsed and delivered to the defendant, and therefore it is no more than the ex parte statement of the defendant, made after the transaction was closed. Then again the defendant did not seem to be clear at the trial as to what his defense was under the receipt.

If this receipt came within the rule in Jessop v. Ivory, 158 Pa. 71, there would be much force in the contention that the court erred in admitting parol testimony and in the charge as to the effect of the receipt. In that case the defendant showed, and indeed it was admitted that the written receipt contained an agreement to return the money in a certain contingency, and the presumption therefore was that there was no other contingency. But not so with the receipt in the present case. It does not show the contingency in which the " loan " should be repaid. And the court was clearly right in saying that the

receipt did not fit into the theory of either party.    In our opinion the court fairly submitted the defendant's theory to the jury and it was his misfortune that the jury did not believe in and adopt his defense.

We do not think any authority can be found requiring the court to so construe the indorsement and receipt that the plaintiff should be deprived of going to the jury on his version of the contract made at the time of the transaction.    In our opinion the cases fully warranted the court in permitting the jury to find the real contract from the evidence.    The competency of parol evidence in this case is shown by many authorities but we will only cite the following: Shoemaker v. Stiles, 102 Pa. 549 (see p. 553); Wolf and another v. Phila., 105 Pa. 25 (see p. 30).

The assignments of error are all dismissed and the judgment is affirmed.