Judgment reversed, and <em>venire de novo</em> awarded.

---

[PHILADELPHIA, MARCH 22, 1841.]

## ALLSHOUSE *against* RAMSAY.

IN ERROR.

1. The presumption of the law is, that a contract is intended to be performed in the place or country in which it is made, if there be not an express agreement or necessary implication that it is to be performed elsewhere; and whenever such understanding is not apparent, the law of the contract is the law of the place where it was made.

2. On a contract made in one state of the union for the payment of money, the debtor is not bound to go to another state to tender the money to the creditor.

3. Where A. residing in Pennsylvania, had obtained a judgment against B., who resided in New Jersey, and the defendant, who also resided in New Jersey, made a verbal promise to pay the money for B. if A. would wait a certain time: it was *held,* that this promise was void under the statute of frauds of New Jersey, and that an action could not be maintained upon it against the defendant in the courts of Pennsylvania.

ERROR to the Court of Common Pleas of Northampton county.

(Allshouse v. Ramsay.)

This was an appeal from the judgment of a justice of the peace, in an action brought by Adam Ramsay against John M. Allshouse.

The following case was stated for the opinion of the court below.

" On the trial of this cause before the justice, Jacob Winters, Esq:, on behalf of the plaintiff, testified : " That he was a justice of the peace in Warren county, New Jersey, where the defendant also resides. That the plaintiff had obtained judgment before him against one Jacob Vannata, for eighteen dollars debt, and eighty-two cents costs, and directed the witness to issue execution by a certain day. That on that day he called on the defendant, with whom Vannata lived, and requested the defendant to pay the money for Vannata, who was working for him, and save him the costs. He refused then, alleging that he was, in all probability, then behind and in debt to him ; but said if Ramsay would wait three months, to the first of August, he (the defendant,) would pay him the money ; the witness replied that he would see the plaintiff that day, he expected, and he would let him know. That he saw the plaintiff, and told him, who said ' he would do it, provided he would positively pay the money at the expiration of three months.' The witness testified he told this to the defendant, who said he would ; the witness requested a due bill from the defendant, which he refused, alleging that his word was as good as his bond. On the first of August, the witness requested payment of the defendant, who replied, he couldn't then. " Ramsay told me to ask him again ; I did so, and he said he would not pay at all. This conversation with Allshouse all took place in New Jersey, where all the parties lived but the plaintiff, who had shortly before removed to Pennsylvania. Allshouse was at that time in partnership with one Peter A. Miller. Vannata, I expect, was at work for the partnership, though I don't know."

In the state of New Jersey there was at the time of the above transactions, and still is in force there, an act of the legislature of that state, entitled, " An act for the prevention of frauds and perjuries," passed the 26th of November, 1794, the fourteenth section of which is in these words, " No action shall be brought, whereby to charge any executor or administrator upon any special promise, to answer damages out of his own estate, or whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriages of other persons, &c., unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person, thereunto by him or her lawfully authorised."

Although the defendant denies that he promised, as the witness has detailed, and believes that he was misunderstood by the esquire ; yet, such being his recollection, and as no other person heard the

(Allshouse *v.* Ramsay.)

conversation to explain it otherwise, it is agreed that the above facts and testimony be taken as true, in connection with the foregoing act of assembly ; and that if the court be of opinion that the plaintiff would be entitled to a verdict thereupon, that judgment be entered in this cause for the plaintiff with costs ; but if the court be of a contrary opinion, that their judgment be entered in favour of the defendant, with costs ; either party to be at liberty to sue out a writ of error. The transcript of the aforementioned judgment and act of assembly of the state of New Jersey, to be considered as part of the case stated."

After argument, the Court of Common Pleas ordered judgment to be entered for the plaintiff, and gave the following opinion.

" The undertaking of the defendant was entered into in the state of New Jersey. By the laws of that state, a promise to pay the debt of another is void if not in writing. A distinction has been taken by courts in regard to this subject, between collateral promises, and original undertakings founded upon a newly superadded consideration. The former are within the statute, the latter are not. Here the original debtor was in the service of the defendant. That the promise was founded on the supposition that he would continue in his service is pretty evident, for the defendant refused to pay unless time was given, as the original debtor had lifted his wages up to that time. Whether the debtor did continue in the employment of the defendant afterwards, and, if he did, whether he lifted his wages or not, is not made part of the case, so that the facts are not sufficiently stated on this point.

At the time the contract was made, Ramsay lived in Pennsylvania. The promise was to pay him the money. This engagement bound the defendant to pay the money to Ramsay. Pennsylvania was the place where the contract was to be executed by the payment of the money. That being the case, the liability of the defendant is to be tested by the laws of the place where the contract was to be executed. The case discloses merits sufficient to entitle the plaintiff to judgment under the laws of this state. Therefore judgment is rendered for the plaintiff in the case stated."

The following errors were assigned.

" 1. The court erred in directing judgment to be entered for the plaintiff below ; they should, upon the facts stated, have entered judgment for the defendant.

2. The court erred in declaring the promise stated to have been an original promise.

3. The court erred in stating that the promise alleged was made

(Allshouse *v.* Ramsay.)

in reference to the laws of Pennsylvania; all the facts show the contrary."

Mr. *Maxwell* for the plaintiff in error, cited *Story's Conflict of Laws,* 215, 216, 267, 524.   *Camp* v. *Lockwood,* (1 *Dall.* 420.)   *Leonard* v. *Vredenburgh,* (8 *Johns.* 37.)   *Matson* v. *Wharam,* (2 *Term Rep.* 80.)   1 *Wms. Saunders,* 211, n. 2.   *Chater* v. *Beckett,* (7 *Term Rep.* 201.)   *Fish* v. *Hutchinson,* (2 *Wils.* 94.)   1 *Pothier,* 370.

Mr. *A. E. Browne* contra, cited *Story's Conflict,* 233.   *Walter* v. *Walter,* (1 *Wharton's Rep.* 301.)   *Golden* v. *Prince,* (3 *Wash. C. C. Rep.* 313.)

The opinion of the court was delivered by

Gibson, C. J.—There are discrepant texts of the civil law touching the question whether a foreign contract is subject to the law of the place where it was made, or the law of the place where it is to be executed; and the commentators by no means agree in their attempts to reconcile them.   The common law rule is, that the validity of a contract is to be determined by the law, at the place of its origin; and those cases which have sometimes been made the basis of another rule, are to be viewed rather as exceptions.   Such undoubtedly is the case of a contract which is to be executed in a foreign country, and which is presumed to be framed on the basis of the law at the place of its execution.   2 *Kent,* 459.   *Story's Confl.* ch. 8, § 260.   But taking the *locus contractus* in such a case, to be the place of performance, still a presumption arises that the contract is intended to be performed where it is made, if there be not an express or necessary understanding that it is to be performed elsewhere; and whenever such understanding is not apparent, the law of the contract is the law of the place where it was made. 3 *Burge's Confl.* 758. *Id.* 2 vol. 851.   Such are the principles applicable to the subject, as they have been stated by the best British and American jurists; and what is there in the case before us to indicate the existence of an understanding that the contract was to be executed in Pennsylvania?   The promise was made in New Jersey, where all the parties but the creditor lived; and it was to pay the debt at the end of three months, without regard to place.   But the creditor had shortly before removed to Pennsylvania; whence an argument that, as every one must be taken to have intended the legal consequences of his acts, the parties, in this instance, must have intended that payment should be made at the place of his domicil.   But an obligation thus to pay, is not even a legal consequence of the contract. Where the place of payment is not designated, the money must be tendered wherever the creditor is to be found within the realm; but the creditor is not bound to go out of it to seek him.   *Co. Lit.* 210

b.    The rule of the civil law is narrower still, it being said that payment must be made at the place where the contract was made, unless it appear by express provision or necessary inference that another place was intended.    3 *Burge's Confl.* 822.    As, then, there was no stipulation about place in this instance, the debtor was not bound to follow his creditor to Pennsylvania, which, as regards transactions of this nature, stands in relation to other states as a foreign country —a principle decided in *Buckner* v. *Finley,* (2 *Peters,* 587,) in which the states of the Union were held to be foreign countries as regards each other, in respect to bills of exchange.    This contract must be left, then, to the operation of the particular clause in the New Jersey statute of frauds; and if it be such as that clause requires to be in writing, the plaintiff will derive no advantage from the omission of such a clause in the statute of Pennsylvania.

Decisions on the British statute of frauds are received perhaps in all the states, as guides in the exposition of enactments on the same basis; and those of them which pertain to the interpretation of the second clause in the fourth section of that statute, are consequently applicable to the same clause in the statute of New Jersey. The rule extracted from them by Mr. Justice BULLER, in *Matson* v. *Wharam,* (2 *T. R.* 80,) is, " that if the person for whose use the goods are furnished, is liable at all, any other promise by a third person to pay the debt, must be in writing, otherwise it is void by the statute of frauds;" and the existence of liability on the part of him who had the benefit of the original consideration, has been the criterion in the subsequent cases.    In that case, it was said that Lord MANSFIELD had taken a distinction in *Mawbray* v. *Cunningham,* which was overruled in *Jones* v. *Cooper,* (*Cowp.* 227,) between a promise before credit given, and a promise after it, supposing the former necessarily to be an original undertaking in all cases, and the latter to be a collateral one; the truth of which is doubted in *Roberts on Frauds,* 210.    But in *Peckham* v. *Faria,* (3 *Doug.* 13; S. C. 26 *Eng. Com. Law Reps.* 15,) Lord MANSFIELD himself confirmed the statement of Justice BULLER, and at the same time receded from his former position.    It is scarce necessary to say, that the report of that case was not published when Mr. Roberts wrote.    In no case, then, since *Jones* v. *Cooper,* has it been doubted, that if credit be given to a third person, either a subsequent or precedent promise is a collateral one. Such is the doctrine of *Anderson* v. *Hayman,* (1 *H. B.* 120,) and such it has continued to be down to *Darnall* v. *Tratt,* (2 *Car. & Payne,* 82; S. C. 12 *Eng. Com. Law Rep.* 36.)    Had the courts of New Jersey adopted any other interpretation of their statute, we would be bound by it; but in *Dilts* v. *Parke,* (1 *Southard,* 219,) and *Hoppock* v. *Wilson,* (*id.* 149,) the principle of the British decisions seems to have been followed.    What, then, is the case here ?    The defendant promised to pay a judgment against another, which is still in force.    Had the promise been taken in satisfaction of it, he

(Allshouse *v.* Ramsay.)

would have made the debt exclusively his own; but the considera-
tion was only to forbear; and the promise was, in the words of the
statute, to pay another's debt. The very case was put as an illus-
tration by the Chief Justice, in *Buckmyr* v. *Darnall*, (2 *L. Raym.*
1085.) "Where a man is indebted," said he, " and J. S. in consi-
deration that the creditor would forbear the man, promises to pay
him the debt, such a promise is void unless it be in writing." It is
clear, then, that the law of New Jersey rules the case; and that the
debt is irrecoverable by it.

> Judgment of the court below reversed; and judgment
> for the defendant on the case stated.