# Nugent *versus* Wolfe.

1. A parol promise to indemnify one, if he will go security for a third person, is within the Statute of Frauds and Perjuries.

2. Where the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt for which a third party is and continues to be primarily liable, the agreement whether made before or after, or at the time of the promise of the principal, is within the statute and not binding unless evidenced by writing. On the other hand when the leading object of the promise is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

3. The question, whether each particular case comes within the statute or not depends not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on part of the defendant or his property, except such liability arises from his express promise.

4. The special promise to answer for the debt of another within the meaning of the Statute of Frauds and Perjuries must be: (*a*) A collateral and not an original undertaking. (*b*) Independently of the debt or liability of the third party, there must be a good consideration for the collateral agreement. (*c*) The debt of the third person must continue, which it does not where the creditor gives up his claim on his original debtor and accepts the new promise in lieu thereof. (*d*) If the debt of the third person continue, the promisee cannot receive a bond or pledge of a fund as security from the debtor for the payment of the debt.

January 11th, 1886. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

[Nugent v. Wolfe.]

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term, 1885, No. 193.

Assumpsit by James Nugent against Frank Wolfe, brought 5th of October, 1882, upon a parol promise by Wolfe to Nugent, that if he, Nugent, would go security for stay of execution for another, he, the said Wolfe, would indemnify and save him harmless from any loss or liability, and from paying anything by reason of his so going security.

On the trial before BIDDLE, J., the following facts appeared:

On the 22d of January, 1876, the Second National Bank of Ravena, Ohio, obtained a judgment against John Power and Martin Power, trading as John Power & Co., for $1,377.73, in the United States Circuit Court. James Nugent went security for John Power & Co. for stay of execution upon said payment.

Plaintiff offered to show, he himself being the witness, that in the early part of February, A. D. 1876, Frank Wolfe, the defendant, came to him and requested him to go security for stay of execution upon judgment obtained in the United States Circuit Court, by the Second National Bank of Ravena, Ohio, against John Power and Martin Power, trading as John Power & Co., for $1,377.73; the said Wolfe promising, undertaking and agreeing with the said Nugent, that in consideration of his, the said Nugent's going the security as aforesaid, he, the said Wolfe, would indemnify and save the said Nugent harmless from any loss or liability, and from paying anything by reason of his so going security. That he, the said Nugent, relying upon the said promise and undertaking of the said Wolfe, and in consideration of the same, agreed to go the security as aforesaid. Objected to. Objection sustained. Exception for plaintiff. (First assignment of error.)

It is admitted that Nugent did go the security for stay of execution as aforesaid; was sued upon the bond executed by him as security at its maturity, and was obliged to pay the amount of the judgment obtained againt him, $1,499.74, and that the said Wolfe, though often requested, has not paid any portion of the said sum so paid by the said Nugent upon judgment obtained against him upon said bond.

The plaintiff closed his testimony. On motion of defendant's attorney the court granted a nonsuit, which the court *in banc* refused to take off.

The case had formerly been tried and a verdict had been rendered for the plaintiff for $1,930.30. A rule for a new trial had been granted. BIDDLE, J., in making the rule absolute, delivered the following opinion March 22d, 1884. It is here given as a very valuable review of the law on the important question in this case:

[Nugent v. Wolfe.]

The question is squarely presented, whether a promise by one person to indemnify another, in consideration of the latter's incurring a liability as security for a third, is valid under the first section of the Act of April 26th, 1855, P. L., 308, unless reduced to writing. The statute is copied from the Act of 29 Charles II., cap. 3, A. D. 1676, and is apparently in force in most, if not all, of our states. The clause in question is, that no action shall be brought " whereby to charge the defendant upon any special promise to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum thereof, shall be reduced to writing, and signed by the party to be charged therewith, or some person by him authorized." The statutes being practically identical, the authorities, both English and American, are pertinent to its consideration ; but unfortunately they are so numerous and conflicting that it is impossible to deduce any general principle from them. As was said by Judge STRONG, in Maule v. Bucknell, 14 Wright, 51, " upon no subject, perhaps, has there been more diversity of judicial decision." The truth is, it was for very many years a subject of dispute whether the statute did not promote more fraud than it prevented, and as one or other of these views was in the ascendant, the law was construed liberally or strictly. Lord ELDON, in Cooth v. Jackson, 6 Vesey, 37, says : " I feel all the disinclination which has been lately expressed, and strongly expressed, in many cases, to carry on what may be called the struggles of courts of justice to take cases out of the reach of the statute, further than they have been carried."

Fortunately, in Pennsylvania this particular section, the 4th of Charles II. was not adopted until 1855, one hundred and seventy-nine years after it had been in practical operation, and only when our people had become satisfied of its utility. Our rulings, therefore, have been at least uniform. The particular question, however, involved in this case has never been authoritatively decided in this state.

In Wm. Saunders, 211, note e, it is said, " the question whether each particular case comes within the clause of the statute or not depends not on the consideration of the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise." This is undoubtedly the construction of the statute in Pennsylvania : See Maule v. Bucknell, 14 Wright, 52 ; Townsend v. Long, 27 P. F. S., 143 ; Shoemaker v. King, 4 Wright, 107. The reasoning, therefore, by which a contract such as this is held to be within the statute is, that as soon as the surety signs the bond, the legal implication arises that if he is obliged

to pay it, the principal will be bound to pay him. The principal being bound to reimburse the surety, the engagement of the party who has promised to indemnify the surety is collateral to that obligation, and is simply an engagement that if the principal does not repay the surety, he will do so. This, it is contended, is clearly a promise to pay the debt of another.

The view of those who hold that this case is not within the statute is by no means so easily stated or so clear. The latest English case (Wildes *v.* Dudlow, L. R., 19 Eq., 199, MALINS, V. C.), declares that the point is plain upon principle, but states no principle and gives no reason. Mr. Brown, in the last edition (1880) of his work on the Statute of Frauds, says that the American decisions have resulted " in the rejection by the great preponderance of authority of the doctrine of Green *v.* Cresswell, and the adoption of Thomas *v.* Cook—a result reached after much vacillation on the part of courts of the same state, and not, it must be confessed, by reference to any satisfactory ground of principle. Indeed, most of the decisions which reject the doctrine of Green *v.* Creswell waive altogether the question of principle, and put it as a matter settled by authority that the promise to indemnify " is not within the statute."

The semblance of principle which seems to be most plausible, and is here contended for, is, that while the implied obligation of the principal to repay his surety does exist, yet it is a mere incident of the special contract existing between the surety and his guarantor; that the statute applies only to obligations which exist or may exist, whether any contract may be made by the surety and his guarantor or not; that in this case Wolfe did not promise to be answerable for the debt of Powers & Co. to Nugent, for Powers & Co. owed no debt to Nugent. They became indebted to him long after the promise of Wolfe was made, and the state of affairs was to be taken of the date of the promise. " On this ground," says Mr. Brown (p. 186), "it is believed that the doctrine that the statute does not apply to promises to indemnify may rest; at least none so satisfactory or so consistent with the spirit of the statute is suggested in any of the cases." " But the principal's liability to the surety, and the indemnifier's liability, must relate to the same point of time—the moment when the surety signs the bond—are based on the same consideration, the obligation incurred, and are contingent on the same event—the principal's default : " 2 Tenn. Ch. Rep., 452.

It can make no difference whether the principal, Powers & Co., is already indebted to Nugent, or whether he will become so indebted on Nugent going security. In either case the liability assumed by Nugent is only that Powers & Co. snall

discharge their own debt in a twelvemonth, and Powers & Co.
are bound in law to indemnify him if they do not.   It is
therefore evident that the promise to Nugent is only collateral
to the legal liability of the principal to indemnify his own
surety.   And the defendant here is really in the position of
surety that Powers & Co. will indemnify Nugent.   How does
this differ in principle from the very common case of a defen-
dant promising the vendor to see him harmless for any credit
that he might hereafter give to a vendee,

There is no debt due at the time of the promise, and there
can be no obligation till one is contracted, and the vendee has
failed to pay it, and yet it cannot be doubted that this is a
guarantee within the Statute of Frauds : Brown on Frauds,
§ 163.   As was said in Easter v. White, 12 Ohio, 230,
" Whether we have respect to the language or the object, a
reasonable effect can only be given to the statute by holding
it to embrace every undertaking or promise to another, to be
answerable to him upon any contingency or condition for the
debt or damage done to or to become due from a third person
to such promisee, and thereby becoming surety for such third
person to the promisee."

View this case as you may, it is an attempt by a person who
has bound himself by a duly executed instrument of writing
to be responsible for another to relieve himself of the liability
he has incurred by throwing it upon the defendant by his own
oral testimony.   If that is not within the letter and spirit of
the Act which requires that an agreement to answer for the
debt or default of another shall be in writing, and recites in
the words of its preamble that the Act is " for the prevention
of many fraudulent practices, which are commonly endeavored
to be upheld by perjury or subornation of perjury," it is cer-
tainly difficult to present a stronger case.

This doctrine is sustained in a very well considered case :
Macey v. Childress, 2 Tenn. Ch. Rep., 442, where the Chancel-
lor subjects the case to an exhaustive review, and reaches the
conclusion, " that the obligation of a principal to indemnify
his surety, like the obligations of co-sureties to each other,
stands upon a principle of equity, and dates from the creation
of the relation ; " and this being so he holds the case to be
within the Statute of Frauds, the promise to pay the surety
being collateral to the implied promise of the principal.   The
same result is reached by Judge HARE in his learned and
elaborate note to Birkmyr v. Darnell, 1 Smith's Leading Cases,
511.   And while Mr. Brown and Mr. Reed—the advance sheets
of whose forthcoming work on the Statute of Frauds I have
been privileged to see—differ as to the probable weight of
American authority, they appear to have no doubt that the

principle here announced is the true one. That the plaintiff himself was aware of the necessity of a written guarantee is shown from his having, through the counsel of Powers & Co., obtained a bond of indemnity from a third party, who would have been, without it, liable to reimburse him. While the doctrine held at the trial of this case has ample authority to support it, we think the true principle is as we have stated, and that this case is within the statute. Rule for new trial absolute.

The plaintiff took this writ and assigned for error :

1. The learned judge in the court below erred in refusing to admit the testimony of James Nugent as to the facts offered to be proved by him.

2. The learned judge in the court below erred in entering a non-suit.

3. The learned court below erred in refusing to set aside the non-suit.

*P. F. Rothermel, Jr.*, for plaintiff in error.

MERCUR, C. J. Your first assignment of error is not in accordance with the rules of court. (See Rule 24, Rules of Supreme Court.)

Plaintiff in error was permitted to file a new assignment of error at bar.

MERCUR, C. J. Was Wolfe one of the firm ?

ROTHERMEL. No, sir.

The record raises the single question, Is a promise by one person to indemnify and save harmless another in consideration of the latter incurring a liability as security for a third, a promise " to answer for the debt or default of another," within the meaning of the Act of April 26, 1855, § 1 (Statute of Frauds, Br. Purd., p. 724, pl. 4), and therefore invalid unless in writing?

While it appears from some of the earlier cases that there was some doubt in the past, both in England and this country, upon the point, such is no longer the case, and the English authorities and those of the various states are almost unanimous in holding that such promise is not within the statute. Thus this is the doctrine in Massachusetts, in New York, in Maine, in New Hampshire, in New Jersey, in Georgia, in Kentucky, in Iowa, in Indiana, in Minnesota, in Wisconsin, in Vermont, in Connecticut, and in Michigan : Aldrich *v.* Ames, 9 Gray, 76 ; Perley *v.* Spring, 12 Mass., 297 ; Chapin *v.* Lapham, 20 Pick., 467 ; Blake *v.* Cole, 22 Id., 97 ; Sanders *v.* Gillespie, 59 N. Y., 250 ; Mallory *v.* Gillett, 21 Id., 412 ; Smith *v.* Sayward, 5 Greenleaf (Me.), 504 ; Holmes *v.* Knights, 10 N. H., 175 ; Cutter *v.* Emery, 37 Id., 567 ; Apgar *v.* Hiler,

[Nugent v. Wolfe.]

24 N. J. L., 812; Jones v. Shorter, 1 Kelly (Ga.), 294; Lucas v. Chamberlain, 8 B. Monroe (Ky.), 276; Mills v. Brown, 11 Iowa, 314; Horn v. Bray, 51 Ind., 555; Goetz v. Foos, 14 Minn., 265; Vogel v. Melms, 31 Wis., 301; Beaman v. Russell, 20 Vt., 205; Reed v. Holcomb, 31 Conn., 360; Potter v. Brown, 35 Mich., 274; Chapin v. Merrill, 4 Wend., 657. Thomas v. Cook, 8 B. & C., 728; Wildes v. Dudlow, L. R., 19 Eq., 198.

In England the question has been settled definitely, after considerable vacillation, by the case of Wildes v. Dudlow, L. R., 19 Eq., 198.

All the authorities, both English and American, unite in holding,

1. That a promise is not within the statute unless it is collateral to some independent obligation of another.

2. Again, it is universally held that the promise must be to pay the debt of a third party; and a promise to the promisee to pay his, the promisee's, debt to a third person is not within the statute: Oliphant v. Patterson, 6 P. F. S., 368; Browne on Statute of Frauds, 188; Reed on Statute of Frauds, 576; 3 Parsons on Contracts, p. 22, n. p.; 1 Smith's Leading Cases, 528; Eastwood v. Kenyon, 11 A. & E., 446; Hargreaves v. Parsons, 13 M. & W., 561; Fitzgerald v. Dressler, 7 C. B. n., s. 374; Barker v. Bucklin, 2 Denio, 45; Pratt v. Humphrey, 22 Conn., 317; Sternburg v. Callanan, 14 Iowa, 251.

3. It is submitted, however, that under the authorities and the facts of this case it clearly appears that no concurrent liability upon the part of Power & Co., the defendants in the judgment to Nugent, resulted from Nugent entering security for stay of execution.

The mere fact that the promise is given for the benefit of a third person, who receives and profits by the consideration, will not bring it within the statute unless credit be given to him and not exclusively to the promisor: 1 Smith's Leading Cases, 506, and cases there cited.

When it is doubtful whether the third person is liable, or the sale made exclusively on defendant's credit, the question should be left to the jury: 1 Smith's Leading Cases, 507, and cases there cited.

*Lewis Stover,* for defendant in error.—It will be observed that the offer was to prove a simple naked promise, unsupported by any of the numerous circumstances which are usually relied upon to take the case out of the Statute of Frauds. It is not pretended that the defendant had any interest in the original suit; he was not a party nor even the counsel for either of the parties. He was not a co-obligor, as

in Thomas *v.* Cook, nor was it an independent promise in a criminal case where no debt is due, as in Cripps *v.* Hartnoll; nor was it a promise made with funds in hand, or upon a new consideration; neither is it pretended that the defendant used language to mislead the plaintiff, or in any way to impose upon him fraudulently. It is by confounding these cases, in the language of Brown on Frauds, page 161, "that great confusion in the law has arisen."

The plaintiff names twelve states and quotes twenty-two authorities as "holding that such promise is not within the statute;" but upon examination it will be found that the authorities quoted do not sustain his position, except when coupled with one of the important conditions above referred to, wherein this case is entirely wanting, for instance, in four of the said cases: Chapin *v.* Lapham, Mills *v.* Brown, Horn *v.* Bray, Reed *v.* Holcomb, the promise was for a direct benefit to the promisor. In four: Blake *v.* Cole, Apgar *v.* Hiler, Cutter *v.* Emery, and Thomas *v.* Cook, it was a question of contribution between joint obligors who were jointly and severally liable for the whole. In two: Saunders *v.* Gillespie and Potter *v.* Brown, there was a new consideration. In two: Smith *v.* Sayward and Goetz *v.* Foos, were direct promises to the debtor to pay his debt, there was no third person in the case; Holmes *v.* Knight was a criminal case; Perley *v.* Spring was with funds in hand. And in two cases, Mallory *v.* Gillett and Beaman *v.* Russell, the courts hold exactly the contrary doctrine, and say that a promise, such as this, is within the statute. We do not dispute the proposition that a promise is not within the statute unless it is collateral to some independent obligation of another.

In the case of Maule *v.* Bucknell, 50 P. S. R., 39, STRONG, J., after a careful analysis of all the authorities, both foreign and domestic, at page 52, adopts the rule in William's Saunders, 211, note i: "The question whether each particular case comes within the clause of the statute or not depends, not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise." There is nothing in this case surely which makes the defendant liable except such as arises from his express promise, and the responsibility of all others remain undisturbed. The same rule was followed by this court in Townsend *v.* Long, 77 P. S. R., 143, and Gheen's Estate, 7 W. N. C., 66. I may also refer to Hearing & Co. *v.* Dittman, in Court of Common Pleas, No. 1, of this county, 8 Phil. R., 307, and BIDDLE, J., in this case; Nugent *v.* Wolfe, 14 W. N. C., 290. See also Allshouse *v.* Ramsay, 6

[Nugent v. Wolfe.]

Whart., 331; Shoemaker v. King, 40 Pa. St., 107; Miller v. Long, 45 Id., 350.

Mr. Justice STERRETT delivered the opinion of the court, February 1st, 1886.

If the verbal agreement, which plaintiff offered to prove, is within the supplement of 1855 to the Statute of Frauds and Perjuries, there was no error in rejecting the testimony, nor in entering judgment of non-suit. The supplement declares: "No action shall be brought whereby . . . . . to charge the defendant upon any special promise to answer for the debt or default of another, unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person by him authorized": P. L., 308.

Plaintiff gave in evidence the record of two judgments in favor of the First National Bank of Ravenna, one dated January, 1876, against Powers & Co., and the other, March, 1877, against himself as bail for stay of execution on the first mentioned judgment. He then offered to prove, in substance, that in February, 1876, defendant Wolfe requested him to become bail for stay of execution; and, in consideration of his agreeing to do so, promised and undertook to indemnify and save him "harmless from any loss or liability, and from paying anything by reason of his so going security;" that, relying on said promise and undertaking of defendant, he did become bail for stay of execution on the judgment against Powers & Co. This offer was objected to on the ground that the agreement was not in writing as required by the statute, and the proposed testimony was excluded by the court. In the same connection it was admitted that Powers & Co. became insolvent, that plaintiff was compelled to pay the judgment, then amounting to $1,499.74, and that defendant, though often requested, had not paid any portion thereof. The question thus presented is, whether the alleged agreement which plaintiff was not permitted to prove is within the clause of the supplement above quoted.

The clause in question is copied, substantially, from the fourth section of the English Statute, 29 Charles II., chap. 3, which, with slight changes in phraseology, has been generally adopted in this country. During the more than two centuries since its original enactment, the construction of this section, and its application to various forms of contract, have been constantly the subject of contention; and on no question, perhaps, has there been greater diversity and contrariety of judicial decision, in this as well as in the parent country.

[Nugent *v.* Wolfe.]

Cases of real or apparent hardship have repeatedly led courts to put a strained and unnatural construction on what appears to be a plain and easily comprehended act, passed for the purpose of preventing the commission of fraud and perjury. If time would permit, a review of the many conflicting and irreconcilable decisions that, from time to time, have been rendered, and the refined distinctions upon which they have been based, would be interesting; but the undertaking would be too great, and withal not specially profitable.

It is very evident that the statute was not intended to apply except in cases where, in addition to the promisor and promisee, there is also a third party to whose debt or undertaking the agreement of the promisor relates, and not even then unless the liability of the third party continues. In other words, the agreement, to be within the purview of the statute, must in a certain sense be a collateral and not an original undertaking. Independently of the debt or liability of the third party, there must, of course, be a good consideration for the collateral or subordinate agreement, such for example as a benefit or advantage to the promisor or an injury to the promisee. It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.

As was said by Mr. Justice STRONG in Maule *v.* Bucknell, 50 Pa. St. 39, 52, "It is undoubtedly true that a promise to answer for the debt or default of another is not within the statute, unless it be collateral to a continued liability of the original debtor. If it be a substitute, an agreement by which the debt of another is extinguished, as where the creditor gives up his claim on his original debtor, and accepts the new promise in lieu thereof, it need not be in writing. And, as the cases referred to show, it may be unaffected by the statute, though the original debt remains, if the promisor has received a fund pledged, set apart, or held for payment of the debt. But, except in such cases, and others perhaps of a kindred nature, in which the contract shows an intention of the parties that the new promisor shall become the principal debtor, and

the old debtor become but secondarily liable, the rule, it is believed, may be safely stated, that while the old debt remains the new must be regarded as not an original undertaking, and therefore within the statute.    At least this may be stated as a principle generally accurate.    In William's Saund. 211, note, it is said:    The question whether each particular case comes within the clause of the statute or not, depends not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise."

If one says to another, "deliver goods to A. and I will pay you," the verbal promise is binding, because A., though he receives the goods, is not responsible to the party who furnishes them.    But, if instead of saying, "I will pay you," he says, "I will see you paid," or "I will pay you if he does not," or uses words equivalent thereto, showing that the debt is, in the first instance, the debt of A., the undertaking is collateral, and not valid unless in writing.    In these latter cases, the same consideration, viz: the consideration of the promise of the principal is a good consideration for the promise of the surety or collateral promisor.    The credit is given as well upon the original consideration of the principal as the collateral promise of the surety, and is a good consideration for both:    Nelson v. Boynton, 44 Mass. 396, 400.    Other applications of the principles above stated might be suggested, but it is unnecessary to do so.

In the case before us the only consideration, for the alleged agreement, disclosed by plaintiff's offer, is the disadvantage to him, the risk he incurred by becoming bail for stay of execution on the judgment against Powers & Co.    If they failed to pay their debt, then in judgment, at the expiration of the stay, he thereupon became fixed for the amount thereof.    In consideration of the risk or contingent liability thus assumed by plaintiff at defendant's request, the latter promised and agreed to pay the judgment or see that it was paid by Powers & Co., and thus save plaintiff from the necessity of paying the same. In other words, defendants specially promised, for a good and valid consideration, to answer for the default of Power & Co., in not paying the judgment at expiration of the stay.    Such is the nature and character of the agreement on which plaintiff claimed to recover, and it appears to come within the letter as well as the spirit of the clause under consideration.    If it is not an agreement to answer for the debt or default of Powers & Co., it would be difficult to say what it is.    Their liability to the bank still remained.    The only consideration moving between the promisor and promisee, as claimed by the latter,

1 AMERMAN—31

[Reed, Crane & Co. *v.* Kremer & Co.]

is the risk he incurred in becoming bail for Powers & Co. There is no testimony, nor was any offered, to show that defendant had any personal interest in the judgment on which bail was entered, or that he held property or funds that should have been applied to the payment thereof. So far as appears, it was the proper debt of Powers & Co., and the substance of defendant's agreement is that he would see that they paid it ; and, if they failed to do so, he would pay it for them. It was literally a promise to answer for the default of Powers & Co. Plaintiff's liability as bail for stay was merely collateral to the debt in judgment, and had in contemplation nothing but the payment thereof to the bank.

Without pursuing the subject further, we are satisfied the alleged promise of defendant is within the statute, and cannot be enforced, because it is not in writing. Our own cases are in accord with this view : Allshouse *v.* Ramsay, 6 Whart., 331 ; Shoemaker *v.* King, 40 Pa. St., 107 ; Miller *v.* Long, 45 Id., 350 ; Maule *v.* Bucknell, supra ; Townsend *v.* Long, 77 Pa. St., 143.

The object of the statute is protection against "fraudulent practices commonly endeavored to be upheld by perjury," and it should be enforced according to its true intent and meaning, notwithstanding cases of great hardship may result therefrom. There never was a time in the history of our jurisprudence when the necessity for such a statute was greater than now, when persons in interest, as well as parties to the record, are generally competent witnesses.

Judgment affirmed.