[No. 8020.    Department One.    June 22, 1909.]

GEORGE H. MEAD *et al.*, *Appellants*, v. S. A. WHITE *et al.*, *Respondents.*[1]

FRAUDS, STATUTE OF—DEBT OF ANOTHER—COLLATERAL OR ORIGINAL PROMISE. Where a building contract recited that it is between, and it was signed by, the contractor, as party of the first part, and the owner as party of the second part, the obligation of alleged sureties also signing the contract is a collateral and not an original undertaking, and is within the statute of frauds.

SAME—MEMORANDUM. The contract of persons who sign "as sureties," at the foot of a written building contract between the contractor and the owner, is not in writing, and is void as within the statute of frauds, where the writing contains no provision connecting the sureties with it or showing their relation to the parties.

SAME—VOID CONTRACT—REFORMATION. A contract, void within the statute of frauds, cannot be reformed upon parol evidence.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 2, 1908, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*E. L. Culver* and *B. A. Crowl*, for appellants.

*H. G. & Dix H. Rowland*, for respondents.

GOSE, J.—The appellants commenced this action for the purpose of reforming a written contract, and recovering a judgment thereon against the defendant and the respondents for its breach. The introductory part of the contract is as follows:

"BUILDING CONTRACT.

"This agreement made and entered into this 25th day of March, 1907, by and between J. R. Winslow, party of the first part, hereinafter designated the contractor, and George H. Mead and Helen M. Mead, party of the second part, hereafter designated the owner.

"Witnesseth: That the contractor, in consideration of the

[1]Reported in 102 Pac. 753.

agreements herein made by the owner, agrees with said owner as follows   . . ."

The contract, which is quite lengthy, then provides what shall be done by the contractor and the owner respectively. The attestation clause and the subscription are as follows:

"In witness whereof the parties of these presents have hereunto set their hands the day and year first above written.
"In presence of sureties          J. R. Winslow.
"S. A. White.                    George H. Mead.
"W. F. Bailey.                   H. M. Mead."

The words "in presence of" are printed, and the word "sureties" was written before the contract was signed. The complaint charges that the respondents "subscribed as sureties for the faithful performance of such contract on the part of J. R. Winslow," and prays that the contract be reformed as to the respondents so as to read: "Subscribed as sureties for the faithful performance of said contract on the part of J. R. Winslow," and for judgment against the defendant and the respondents. The case was tried to the court, resulting in a judgment for the respondents. From such judgment, this appeal is prosecuted.

The answer, among other things, pleads that the contract is void under the provisions of Bal. Code, § 4576 (P. C. § 5343), which provides:

"In the following cases specified in this section, any agreement, contract, and promise shall be void, unless such agreement, contract, or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say:—   . . .

"(2)   Every special promise to answer for the debt, default, or misdoings of another person;   . . ."

The contract does not show the relation of the respondents to it, other than such as may be gathered from their signatures. Upon reading the contract the mind at once inquires, for whom and for what purpose did the respondents sign. The contract may be searched in vain for an answer to this

inquiry. It contains many requirements upon the part of the contractor and the owner, but is silent as to any duty or obligation as to the respondents. The discussion takes broad ground in the briefs, but the view we take of the case narrows the scope of inquiry.

The appellants contend, first, that the contract of the respondents is an original undertaking rather than a collateral one, and as such that it is not within the statute. We will first notice this contention. When the object of the undertaking is to become surety for another, the promise is collateral and must be in writing. 20 Cyc. 163. In *Nugent v. Wolfe*, 111 Pa. St. 471, 480, 4 Atl. 15, 56 Am. Rep. 291, speaking to the question of the distinction between an original and a collateral promise, the court say:

"It is difficult, if not impossible, to formulate a rule by which to determine in every case whether a promise relating to the debt or liability of a third person is or is not within the statute; but, as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute."

"Courts must rely on the circumstances of each particular case, and its general features in order to ascertain the intent of the parties, and how they viewed it when it is doubtful whether it was a contract of suretyship or guaranty or an original undertaking. Generally speaking an oral undertaking by a person not previously liable, for the purpose of securing the debt or performing the same duty for which the person for whom the undertaking is made remains liable, is within the statute of frauds and must be in writing." 20 Cyc. 164.

Upon both principle and authority, we have no difficulty in reaching the conclusion that the undertaking of the re-

spondents· was a collateral one. The contract, therefore, must be in writing, notwithstanding the fact that all the parties entered into it at the same time. Stearns on Suretyship, p. 42.

We will next consider whether the contract as it affects the respondents is in writing within the meaning of the statute. In *Foote v. Robbins*, 50 Wash. 277, 97 Pac. 103, the court had under consideration a contract whereby the owner employed a broker to sell real estate. The terms and conditions of sale were complete, but the contract was silent as to the broker's compensation for his services. At pages 279-80, the court said:

"If by the written agreement the payment of a commission by respondents was contemplated, resort must now be had to oral evidence for the purpose of showing the amount of such commission, and that it was to be paid by the appellant as vendor and not by the purchaser as vendee. The unmistakable purpose of the statute was to avoid any such method of fixing the extent of the liability, or the liability itself, of either a vendor or a vendee for the payment of a commission."

In *Allen v. Kitchen* (Idaho), 100 Pac. 1052, a well-considered case, the court, speaking through Ailshie, Judge, at page 1056, say:

"There is no contract until it is reduced to writing as provided by law. It is not a question as to what the contract was intended to be, but rather, was it consummated by being reduced to writing as prescribed by the statute of frauds. Admittedly an essential portion of the contract in this case was not reduced to writing and subscribed by the party to be bound. This case, therefore, presents the question of adding to and supplying an insufficient description, rather than that of reforming an untruthful description. If a court of equity can supply one requirement of a contract that is required by the statute of frauds to be in writing, it may supply another, and the logical conclusion would be that it might in the end supply all the requirements, and thereby contravene a positive statute. This cannot be done."

"In order to render an oral contract falling within the scope of the statute of frauds enforceable by action, the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or by a reference contained in it to some other writing, without recourse to parol proof to supply them. Accordingly, if an oral contract falling within the scope of the statute has terms not stated in the memorandum, or if the memorandum contains a reference to such terms or imports their existence by fair inference without clearly stating them, or if the memorandum merely refers to the contract without stating its terms, the case falls within the statute." 20 Cyc. 258-9-60.

See, also, *Board of Comrs. Marion County v. Shipley*, 77 Ind. 553; *Lee v. Hills*, 66 Ind. 474; *Grant v. Naylor*, 4 Cranch 224, 2 L. Ed. 603.

The document, aside from the word "sureties" and the signatures of the respondents, states a complete contract between the appellants and the defendants, but contains no provision which even tends to connect the respondents with it. As between the appellants and the respondents, there is an entire absence of contract. In order to hold the respondents to any liability, the court would be required to create a contract, either by construction or by parol evidence. There is no language in the contract to warrant the former, and the latter is within the prohibition of the statute. Surely the mere subscription of the contract by the respondents under the word "sureties," without showing their relation to the contract or to the parties, cannot be said to create any contract relation. A cursory examination of the record in this case affords abundant evidence, if evidence were wanting, of the wisdom of the statute. One of the respondents testified that he only engaged to guarantee the integrity of the defendant, while the other said that he signed merely for the purpose of recommending him.  .

Finally, it is contended that a court of equity has power to reform the contract and to enforce it when so reformed. The contract being invalid under the statute, parol evidence will

not be admitted for the purpose of reforming it. To do so would result in permitting the parties to accomplish indirectly that which the statute forbids. Speaking to this question in *Allen v. Kitchen, supra,* at page 1057, it is said:

"After a very careful examination of the many authorities dealing with this question, we are clearly of the opinion that courts of equity have power and jurisdiction to so reform an executory contract that is valid and binding on its face as to relieve it of any statement, declaration, or description that has been inserted therein through deception, fraud, or mutual mistake, and to make the statements speak the truth as it was intended to insert them in the instrument. On the other hand, we are equally satisfied that a court of equity has no power or jurisdiction to construct an executory agreement for the parties, or to insert therein new and essential elements, or matter that is required by the statute to be reduced to writing in order to make the contract valid and binding. In other words, reformation does not mean re-creation. The court will not, under the guise of reforming an instrument construct or reconstruct the instrument, so as to make it comply with the statute."

See, also, *Glass v. Hulbert,* 102 Mass. 24, 3 Am. Rep. 418. The record does not present the question of reforming a contract so as to speak the truth, but rather of creating a contract in its entirety.

What we have said renders it unnecessary to consider the other assignments. The judgment will be affirmed and the respondents will recover their costs.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.