## VOGEL ET AL. *v.* ENSOR.

[No. 10,864. Filed June 9, 1921.]

1. BROKERS.—*Real Estate.*—*Contract for Commissions.*—*Sufficiency.*—*Statutes.*—A contract to pay commissions to a broker for the sale of real estate which fails to state the amount of commission which he is to receive, is incomplete and invalid under §7463 Burns 1914, Acts 1913 p. 638, requiring such contracts to be in writing, since, a material part of the contract, the amount of commission to be paid, being verbal, the whole contract is oral. p. 93.

2. BROKERS.—*Real Estate.*—*Contract for Commissions.*—*Failure to Specify Amount of Commission.*—*Reformation.*—*Statutes.*—A real estate broker's contract, that "if the owner sold the property to a party or parties whose attention was directed to the property" by the broker he was "entitled to and shall receive his commission of —— per cent. on the sale price thereof,"

being invalid under §7463 Burns 1914, Acts 1913 p. 638, requiring such contracts to be in writing because failing to specify the rate of commission to be paid, cannot be reformed by parol evidence, since the equitable doctrine of reformation cannot be invoked to give force and effect to an invalid contract. p. 94.

From Warrick Circuit Court; *Marshall R. Tweedy,* Judge.

Action by Charles B. Vogel and others against James H. Ensor. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*Caleb J. Lindsay,* for appellants.

*Roscoe Kiper, Henry F. Fulling* and *Arch Stevenson,* for appellee.

ENLOE, C. J.—The complaint in this case was in two paragraphs, to each of which a demurrer interposed by appellee for want of facts was sustained, and the appellants, refusing to plead further, suffered a judgment to be rendered against them for costs, from which this appeal is prosecuted. The errors assigned challenge the action of the court in sustaining said demurrers.

The first paragraph of the complaint was based upon a certain instrument in writing, which purported to be a real estate broker's contract. That part of said instrument material to the decision of this case read as follows: "Provided that said J. H. Ensor sell this property to party or parties whose attention was directed to said land by said Mitchell then said Mitchell entitled to and shall receive his commission of —— per cent. on the sale price thereof." By the second paragraph of his complaint the plaintiff sought to have said clause of said contract reformed by striking therefrom the word "Mitchell" where the same occurred in said contract and particularly in the aforementioned clause thereof, and inserting in lieu thereof, the names of the plaintiffs herein Charles B. Vogel and William H. Ax-

ton, and also to have said clause before quoted, reformed by inserting the word "three" in the blank before the word "per cent." so that the latter part of said clause would read as follows: "Then said Vogel and Axton entitled to and shall receive their commission of three per cent. on the sale price thereof."

In the said second paragraph of complaint it is alleged: "That it was mutually agreed between plaintiffs and defendant that in case plaintiffs secured a buyer for said real estate that the defendant would pay plaintiffs a commission of three per cent. of purchase price; that by inadvertence and mutual mistake of the plaintiffs and the defendant at the time of drawing said contract, the amount of commission agreed upon between plaintiffs and defendant was omitted from said contract; that said omission was due to a mutual mistake of the plaintiffs and the defendant in drawing said contract; that it was intended by plaintiffs and the defendant to insert said three per cent. in said contract; but the scrivener who drew said contract by inadvertence and mistake left said amount out of said contract." Plaintiffs ask that said contract be reformed and that they be given judgment thereon as reformed, against the appellee in the sum of $660.

The first paragraph of the complaint was clearly insufficient. The contract was incomplete, the amount of the commission to be paid not being stated therein. This was a vital part of the contract which 1. the statute required to be in writing. As said in the case of *Zimmerman* v. *Zehendner* (1905), 164 Ind. 466, 73 N. E. 920, 3 Ann. Cas. 655: "The material part of the agreement—the amount of compensation—is still left in uncertainty and undetermined. The compensation is to be the amount 'understood;' but by whom is not stated. In short, the contract, in so far as it relates to this action, is only partially in writing.

The important feature—the amount of commission to be paid—is to be ascertained by parol testimony in regard to an understanding which may prove to be a misunderstanding, the exact thing which the statute was designed to prevent."

A material part of the contract in suit being verbal, it was an oral contract, and therefore invalid under our statute, §7463 Burns 1914, Acts 1913 p. 638. The court did not err in sustaining the demurrer to said first paragraph of complaint.

The action of the court in sustaining a demurrer to the second paragraph of complaint presents a question of more difficulty. As the contract stood at the time suit was brought, it was entirely without any legal vitality.

2. Is it within the power of a court of equity under the guise of reforming a contract, to vitalize and thereby give legal life and force to that which, as made by the parties, was without such life and force?

It has been repeatedly held that the statute in question was enacted for the purpose of preventing frauds and perjuries by requiring the entire contract to be in writing. In a court of law, it is immaterial that the minds of the parties did actually meet in each and all of the several necessary elements to be embodied in their contract; if they have not evidenced such meeting of their minds by placing their agreement in writing, a court of law will not hear parol testimony on the matter. As said in the Zimmerman case, *supra*: "The understanding as to the commission to be paid may prove to be a misunderstanding." For a court of equity to assume jurisdiction of this matter and permit a contract, such as the one in question, to be reformed under the circumstances revealed by the complaint in this case, such court of equity would be compelled to hear the testimony of the parties; the plaintiffs and their wit-

nesses would be permitted to go upon the witness-stand and testify concerning their understanding of the agreement; the defendant would likewise be permitted to go upon the witness-stand and deny, possibly in *toto,* everything as testified to by the plaintiffs and their witnesses; all of this testimony being parol, the court, sitting as a court of equity, has opened the gates and thus removed the bar, and made it possible for perjury to be committed; to sustain the contention of the appellants would be, in effect, to say that the legislature intended to prevent fraud and perjury in courts of law but had no such intention as to courts of equity. We do not think that the law should be so construed as to produce what seems to us such an unseemly result.

In a note, 34 Cyc 927, it was said: "Through mistake or accident an instrument within the statute of frauds may include subject-matter as lands, which should have been omitted, or it may omit subject-matter which should have been included. No other ground for reformation exists within the statute. As to the first case the authorities agree that reformation does not conflict with the statute of frauds because an instrument already made is merely narrowed down. * * * As to the second a distinct conflict of authorities exists among the American decisions."

In *Lee* v. *Hill* (1879), 66 Ind. 474, it was sought to correct a memorandum of the sale of personal property by inserting therein the word "sold." The court in passing upon the matter said: "It is very clear, we think, that the alleged mistake in this memorandum cannot be corrected, and the writing cannot be reformed, in the manner asked for by the appellants in this action. * * * Their alleged contract for the purchase of said goods from the appellees, therefore, comes fairly within the provisions of section 7 of 'An act for the prevention of frauds and perjuries,' * * *."

The court, after analyzing the alleged memorandum of sale therein involved, said: "The alleged contract for the sale of said goods was invalid, illegal and of no binding force. * * * It is further claimed, that the omission of the fact of sale from the memorandum was the result of mistake; but it is immaterial how the omission occurred, as it is very clear that, under the law, parol evidence could not be received to supply the omitted fact in the memorandum."

In the case of *Stodalka* v. *Novotny* (1893), 144 Ill. 125, 33 N. E. 534, a bill had been filed in chancery to reform and correct a certain contract of sale theretofore entered into between the parties. It was alleged in the bill that the appellant and his wife had agreed to convey certain property therein described to the appellee, and that they had agreed severally to waive their several rights of homestead and dower; that through ignorance, etc., said agreement in regard to release of such homestead and dower was omitted and left out of said contract. There was a prayer for reformation of said contract. In passing upon the matter as to the power of a court of equity to reform the said contract, the court said:

"It would seem clear, if it was a case of first impression, that a verbal contract not in writing, agreeing to convey the homestead, was, under the statute, without validity; and if it be true, as alleged in the bill shown at the hearing, that it was verbally agreed between complainant and the defendants that the homestead should be waived and released, that such agreement could not be specifically enforced, irrespective of whether part of the consideration had been paid or not. * * *

"Not only must the contract contain a special release of the right of homestead, but it must also be in writing, and subscribed by the person in whose favor the

exemption exists, with his or her wife or husband, if he or she have one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged. It is conceded that the contract in writing, executed by the defendants, contained no release or waiver of the homestead; but it is insisted, first, that the agreement was to convey in fee simple clear of all encumberances whatever, and, therefore, it is said, necessarily included the release of the homestead estate. * * *.

"And, second, it is insisted that the verbal agreement between the parties was for the conveyance and release of the homestead estate, and that, by mistake of the scrivener, it was omitted from the written contract, * * *. And the general doctrine, that the courts of equity will correct and reform instruments in writing to accord with the facts, was invoked. This doctrine is well understood and often applied, but courts of chancery will not, under the pretext of correcting a mistake, 'make that a conveyance which is not in itself a conveyance.' Thus it was said in *Lindley* v. *Smith*, 58 Ill. 250, in speaking of conveyances by married women, under the statute then in force: 'A court of chancery cannot give life to an instrument which has no vitality in itself * * *.' So, here, the written instrument was without validity in respect to the estate of homestead of defendants in this property, and the court was without power to vitalize it. As such estate can only be released in writing, subscribed and acknowledged as prescribed by the statute, the attempt of the court to reform the contract in writing, upon proof of the verbal agreement, was in effect to make a new and independent contract affecting a release and waiver of the estate. This cannot be done."

In *Allen* v. *Kitchen* (1909), 16 Idaho 133, 100 Pac.

Vol. 76—7

1052, L. R. A. 1917A 563, 18 Ann. Cas. 914, it was said: "The question arises as to whether or not a contract of this kind within the statute of frauds (§6007 of the Revised Codes) can be so reformed by a court of equity as to make a good and complete description out of an insufficient and void description. It is not a question here of making a contract speak the truth which by its terms speaks untruthfully; or, in other words, of making a contract express the true intent of the contracting parties where, in fact, it expresses on its face something they did not intend or agree upon. There is no contention made here that the contract in any way speaks untruthfully. The complaint is that it does not speak the whole truth. This is the very thing the statute of frauds is enacted to guard against. It requires the contract to be in writing, and prohibits oral evidence to establish a contract of this kind. There is no contract until it is reduced to writing as provided by law. It is not a question as to what the contract was intended to be, but, rather, was it consummated by being reduced to writing as prescribed by the statute of frauds. Admittedly, an essential portion of the contract in this case was not reduced to writing and subscribed by the party to be bound. This case, therefore, presents the question of adding to and supplying an insufficient description, rather than that of reforming an untruthful description. If a court of equity can supply one requirement of a contract that is required by the statute of frauds to be in writing, it may supply another, and the logical conclusion would be that it might in the end supply all the requirements and thereby contravene a positive statute. This can not be done."

In *Mead* v. *White* (1909), 53 Wash. 638, 102 Pac. 753, 23 L. R. A. (N. S.) 1197, 132 Am. St. 1092,

the court, after quoting with approval from *Allen* v. *Kitchen, supra,* said:

"Finally, it is contended that a court of equity has power to reform the contract and to enforce it when so reformed. The contract being invalid under the statute, parol evidence will not be admitted for the purpose of reforming it. To do so would result in permitting the parties to accomplish indirectly that which the statute forbids."

The rule announced in the foregoing authorities we think to be sound law. The court did not err in sustaining the demurrer to said second paragraph of complaint. The judgment is therefore affirmed.