Electro-Tint Engraving Co. *v.* H. S. Eckels & Company, Appellant.

Argued September 28, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Edmund P. Hannum,* and with him *Thomas M. Hyndman,* for appellant.

*Joseph L. Wase,* for appellee.

OPINION BY STADTFELD, J., December 18, 1934:

This was an action of assumpsit by Electro-Tint Engraving Company against H. S. Eckels & Company to recover the sum of $687.04, the amount of certain color plates and etchings, including the Emergency Sales Tax thereon, alleged in the statement of claim to have been manufactured, sold and delivered by plaintiff to defendant, at the instance of defendant acting through its proper agent, one Stanton Massey. To the statement of claim was attached an itemized bill, setting forth the various items and the prices alleged to have been agreed upon.

The defendant filed an affidavit of defense, replaced by a supplemental affidavit of defense, in which it denied the purchase of the goods and set forth a third person, to-wit: Musical Research Products, Inc., as the purchaser on whose behalf it alleged the order was placed by the said Stanton Massey, and denied that the latter acted as agent or employee of defendant company, and averred that he had no authority to purchase said merchandise on behalf of defendant. It admitted that the merchandise was delivered to its place of business, but avers that the receipt of the same was on behalf of the Musical Research Products, Inc.

The case was tried before the court without a jury. The plaintiff offered in evidence the portion of the pleadings not denied, and called the said Stanton Massey as for cross-examination, to which there was no objection by defendant. He admitted that he had been working for defendant company in the capacity of editor for a publication known as "Eckels Embalmer." Joseph T. Hopkins testified that in October,

1932, he was in the employ of plaintiff company as a salesman and that for about 6 or 7 years prior thereto, and while employed with other concerns, he had been doing business with the defendant company through the said Stanton Massey; that on October 6, 1932 he came to the office of the latter in response to a telephone call from him; that he had procured orders previously from defendant for plaintiff as well as for other concerns for whom he had been working, and that the goods so ordered had been received by defendant and paid for; that he took the order for the goods in question; that in response to Mr. Massey's instructions, he put the name of Musical Research Products Corporation on the order, being informed that the defendant company was taking over said corporation as a subsidiary, and for the purpose of bookkeeping and keeping the records straight, to bill them, but that the H. S. Eckels Company would be behind it and see that the bill was paid; that he billed the Musical Research Products Company in response to Mr. Massey's instructions.

Stanton Massey was later recalled on behalf of defendant. He testified that he negotiated with Mr. Hopkins in connection with the orders embraced in this suit; he claimed to have told him that Mr. Luberoff is the president of the The Musical Research Products Corporation and "wants me to act in an advisory way in connection with these plates, to be used in our magazine" for advertising products of the Musical Research Products Corporation; he claimed to have told Hopkins that the defendant would in no way be responsible for the payment of the bills; that no demand for payment was ever made until right before this suit; he admitted that both before and after giving the orders for the plates in suit, he gave orders to Hopkins for other plates for H. S. Eckels Company to go

into their magazine; he admitted having given the photographs or drawings for the plates in question to Mr. Hopkins and discussed the prices with him; that the plates were used in the magazine; that defendant paid for the printing of it; that the name of "H. S. Eckels and Company" appeared therein numerous times and that the name of "Musical Research Products, Inc." did not appear at all; that defendant was the sole distributor of the organs of said company in the mortuary field for funeral homes and mortuary chapels. He admitted that he had given orders to Hopkins for 15 years.

H. S. Eckels & Company were interested in selling in the mortuary field the musical instruments manufactured by the Musical Research Products, Inc., and Luberoff, president of the latter company, wanted defendant to get the advertisement for the product of his company in defendant's magazine. Luberoff was not called as a witness to testify as to the alleged authority of Massey to charge the bill to said company.

Defendant presented a point for finding in its favor which was refused. The trial judge, BLUETT, filed an opinion finding in favor of plaintiff, from which we quote as follows: "At the trial, defendant attempted to prove that its representative was not authorized to enter into any contract for it and that the charge should be made against the Musical Research Products Corporation; that this was an attempt to collect the debt of a third person and that evidence of its obligation should be in writing, under the statutes of Frauds and Perjuries. We are of the opinion that there was a question of fact to be determined and that was whether or not the defendant through its representative had ordered the goods to be manufactured and delivered to it. The trial judge by his finding has found in the affirmative, and in this he is amply supported by the facts in the case. There was then an original under-

taking upon the part of the defendant company and especially as it derived the benefits from the manufacture of the plates, it seems only fair and proper that the defendant now pay the cost thereof. Archbald v. Stone, 91 Superior Ct. 268; American Oil Co. v. Walser, 104 Superior Ct. 89.'' Motions for new trial and for judgment n. o. v. were overruled.

An examination of the testimony warrants this conclusion, and, under the circumstances, the finding is as conclusive as would be the verdict of a jury. There was abundant evidence to support the authority of Massey to give the orders in the instant case on behalf of defendant; the charging of the goods to Musical Research Products, Inc., was to meet the convenience of defendant company, for bookkeeping purposes, and did not change the transaction from an original undertaking on its part. It gave directions as to the character of the items to be manufactured, approved the same when submitted, and accepted delivery thereof upon completion. It derived all the benefits therefrom. As stated in Malone v. Keener, 44 Pa. 107, 110, ''....... where the party undertakes for his own benefit and upon a full consideration received by himself, the promise is not within the statute. It would be good without any writing.''

As stated by Mr. Justice DEAN, in Bailey v. Marshall, 174 Pa. 602, 34 A. 328, quoting from Nugent v. Wolfe, 111 Pa. 471, 4 A. 15: '' 'It is difficult, if not impossible, to formulate a rule, by which to determine, in every case, whether a promise relating to the debt or liability of a third person is or is not within the statute; but as a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee for a debt, for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time with the promise of the principal, is within the statute,

and not binding unless evidenced by writing. *On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay, or discharge the debt of another, his promise is not within the statute.'* " (Italics supplied.)

Under the views expressed supra, there was no variance between the allegata and probata.

The assignments of error are overruled and judgment affirmed.