## WM. FEHLINGER, TO USE, v. JOHN G. WOOD.

| 134 | 517 |
| 201 | 417 |
| 134 | 517 |
| 21 SC | 595 |
| 134 | 517 |
| 26 SC | 568 |
| 134 | 517 |
| f 35 SC | 269 |
| 134 | 517 |
| 39SC | 72 |

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 16, 1890—Decided May 5, 1890.

Where an executor and trustee makes to one who is a debtor to the estate for the unpaid purchase money of lands sold to him by the testator in his lifetime, a promise, personal in its terms, to pay a claim against the promisee for the erection of a dwelling upon the land, in consideration of the promisee's surrender of his contract of purchase to the estate, and his acceptance of a lease of the lands from the executor and trustee, such promise is not within the act of April 26, 1855, P. L. 308, and will be binding upon the promisor personally.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 261 January Term 1890, Sup. Ct.; court below, No. 274. October Term 1885, C. P.

Referee's Report.

On July 2, 1885, S. H. Sturdevant and W. F. Goff, trading as Sturdevant & Goff, brought assumpsit against John G. Wood. The defendant pleaded non-assumpsit, payment with leave, etc. On March 8, 1886, the record was amended by substituting for plaintiffs, "William Fehlinger, to use of Sturdevant & Goff," and subsequently by agreement of counsel the cause was referred to *Mr. J. D. Coons*, as referee, "under the act of March 25, 1870 [perhaps P. L. 540], and its supplements."

The referee made a very clear and elaborate report upon the matters of fact and law brought before him, wherein, considering at length the evidence, oral and documentary, and the cases: Landis v. Royer, 59 Pa. 95; Taylor v. Preston, 79 Pa. 436; Maule v. Bucknell, 50 Pa. 52; Arnold v. Stedman, 45 Pa. 186, and the act of April 26, 1855, P. L. 308, he found as copied from his report, the following

CONCLUSIONS OF FACT:

1. That on February 3, 1877, J. B. Wood contracted to sell to William Fehlinger, the surface of lot No. 47 on plot of J. B. Wood's late addition to Parsons borough, for the sum of $500.

2. That William Fehlinger went into immediate possession of the said lot, and erected or caused to be erected thereon a house, the lumber for which he purchased from the firm of Sturdevant & Goff, at a cost of $237.64. Upon this purchase of lumber, he paid to Sturdevant & Goff $71.50, leaving a balance due and remaining unpaid to Sturdevant & Goff of $166.14, for which amount a mechanics' lien was entered against Fehlinger, and scire facias issued thereon on September 14, 1877.

3. That J. B. Wood died in April, 1877, and by his will, devised to John G. Wood a tract of land, in which was included lot No. 47, in trust for the purposes therein named.

4. That John G. Wood, the defendant, accepted the trust imposed by the will, and pursuant thereto negotiated with William Fehlinger for payment of the purchase money due upon the contract for lot No. 47, and that Fehlinger was unable by reason of want of means, to pay said purchase money, and never paid any.

5. That defendant proposed to Fehlinger that the latter should surrender his interest in the lot, and take a lease of the property in lieu thereof; in consideration whereof, the defendant promised that he would pay the debt of Fehlinger to Sturdevant & Goff.

### Referee's Report.

6. That Fehlinger accepted the promise of defendant, and on March 17, 1881, executed an assignment of his interest in the contract for lot No. 47 to John G. Wood, trustee for the estate of J. B. Wood.

7. That on the same day, defendant made a written lease for the property thus assigned, and the house thereon, to Fehlinger, which lease was continued for a number of years, during which Fehlinger paid and defendant received the rent reserved in the said leases.

8. That during the term of the leases, defendant issued one or more landlord's warrants for the collection of the rent therein reserved.

9. That on June 3, 1885, judgment was entered to No. 31 October Term 1885, upon the collateral judgment in the original contract, in favor of J. G. Wood, trustee, under the will of John B. Wood, and against Fehlinger, for $717.50, with interest from May 3, 1885, and execution was issued thereon on the same day.

10. That the lien or claim of Sturdevant & Goff still remains unpaid and there is due to them the sum of $166.14, with interest from April 1, 1877.

### AND AS CONCLUSIONS OF LAW:

1. That the equitable title to the lot was vested in William Fehlinger when he concluded the contract with John B. Wood, and, while thus vested, the claim of Sturdevant & Goff became a lien upon Fehlinger's interest.

2. That by the assignment of March 17, 1881, the equitable and legal titles were merged in the defendant, as trustee for the owners of the legal title.

3. That by this assignment, the defendant, as trustee, became the purchaser of the equitable title, and his promise to pay the debt of Fehlinger to Sturdevant & Goff was a promise to pay in relief of property thus purchased by him, thus taking it out of the provisions of the act of April 25, 1855.

4. That the power delegated in the will of J. B. Wood did not vest in the defendant the right to make the promise to pay the debt of Fehlinger, nor was he authorized so to do by the principals for whom he was acting. The promise was made in excess of his authority, and was therefore his personal promise.

5. That the plaintiffs are entitled to judgment for the sum of two hundred and eighty-four and 89–100 dollars; and, in the event of no exceptions being filed to this report, the prothonotary is hereby directed to enter judgment in favor of William Fehlinger, to the use of Sturdevant & Goff, plaintiffs, and against John G. Wood, defendant, for that amount with costs.

Exceptions having been filed to the referee's report by the defendant, after argument thereof the court, Rice, P. J., filed the following opinion:

John B. Wood, by his will probated April 13, 1877, devised to his son John G. Wood, the surface of a tract of land, "to have and to hold the same in trust, to sell and convey the same to such purchasers in such parcels and upon such terms as to him may seem meet, and to divide the proceeds thereof in equal shares between himself and my four other children . . . . . and their heirs in equal parts." The will was dated April 3, 1877.

In the preceding February, the testator had entered into a written contract with William Fehlinger for the sale to the latter of a lot belonging to the above mentioned tract. Fehlinger went into possession and built a house on the lot. A portion of the materials were furnished by Sturdevant & Goff. After making some payments, there remained due to Sturdevant & Goff the sum of $166.14, for which amount they entered a mechanics' lien against the building, and, on September 14, 1877, issued a scire facias.

John G. Wood accepted the trust, under his father's will, and made frequent unsuccessful demands on Fehlinger for payment of the purchase money of the lot. Finally, it was agreed that Fehlinger should surrender his contract and take a lease of the premises from John G. Wood. Accordingly, on March, 17, 1881, Fehlinger executed the following assignment, indorsed on his copy of the contract, which was then given up to John G. Wood: "For value received I hereby set, transfer and assign over to John G. Wood, trustee for estate of J. B. Wood, all my right, title and interest in the within agreement;" and on the same day took a lease of the premises from John G. Wood for the term of one year. This lease was

renewed, or other leases were made, from year to year for several years, during which time Fehlinger paid rent for the premises.

In June 1885, John G. Wood, caused judgment to be entered in his favor as "trustee under the will of John B. Wood," against William Fehlinger, for $717.50, with interest from May 3, 1885, on the confession contained in the contract of February, 1877, heretofore referred to, and issued execution thereon.

In July, 1885, Sturdevant & Goff brought this suit against John G. Wood, and declared in assumpsit on a promise alleged to have been made by Wood to Fehlinger, at the time the latter surrendered his contract, to pay the claim of Sturdevant & Goff. Subsequently the record was amended by substituting the name of William Fehlinger as legal plaintiff, to the use of Sturdevant & Goff, and the case was referred. The report of the referee is now before us, on exceptions.

The learned referee, after a full review of the evidence, reached the conclusion that the plaintiff assigned his interest in the contract, upon the inducement and consideration of defendant's promise that he would pay the claim of Sturdevant & Goff.

The evidence upon this question of fact was conflicting. In the course of his discussion, the referee says : . . . . .

It is contended in the second place, that, even if the defendant made the alleged promise, he is not personally liable, because he contracted as executor or trustee. The referee refused to find that he made the promise in a representative capacity ; he also concluded that the contract was in excess of his powers under the will, and that it was not authorized, ratified, or approved by the beneficiaries. The defendant has filed numerous exceptions to these findings, which we will consider together.

The promise was in terms a personal one. It does not appear that, in any of the negotiations, the fact that the defendant was acting as trustee or executor was mentioned. It is not uncommon for an agent to bind himself personally, looking to his principal for indemnity ; and, in this case, the defendant had a personal interest, aside from his interest as trustee and executor, and this was a sufficient motive, as well as a sufficient consider-

ation for making a personal promise. The assignment, it is true, was made to him as trustee. The terms of the trust upon which the land was devised to the defendant have already been quoted, and we think it apparent without argument that they did not give the defendant power to bind the other beneficiaries by a promise of this nature. A trustee can be held personally for materials ordered by him for the trust estate and on contracts made by him in its behalf, unless there be a special agreement to look only to the trust, and this is a question of fact: Perry on Trusts, 437; 1 Parsons on Cont., 102; Ell v. Carmine, 55 Md. 339; New v. Nicoll, 73 N. Y. 127 (29 Am. Rep. 111). See also 1 Reed on Stat. of Frauds, § 168, and Pennsylvania cases there cited.

But the defendant was also executor. The clause of the will appointing him reads as follows:

"I appoint John G. Wood and John Espy the executors of this will, and, in order that the provisions of the seventh section of this will may be the better carried into effect, I order and direct that no law or usage shall oblige my executors to close the affairs of my estate at any earlier period than that above fixed; that they shall have full power and authority in carrying this will into effect to permit the change of my assets from time to time and their re-investment in the carrying on of the banking business aforesaid; that they may give time to debtors, compound debts and take less than their face, and may generally have such other powers as are necessary or convenient to the successful and continuance [sic] management of my estate in manner as above indicated."

The discretionary powers given to the executors, have especial reference to the clause of the will immediately preceding, which relates solely to the continuance of the banking business until it could be safely and successfully closed.

Generally speaking an executor has not power to bind the estate for an indebtedness created by himself: Grier v. Huston, 8 S. & R. 401; Seip v. Drach, 14 Pa. 352; Dougherty v. Stephenson, 20 Pa. 214; Williamson's App., 94 Pa. 236; Oram's Est., 9 Phila. 358. The express powers given to these executors, although broad, are not unlimited. They were authorized, it is true, to collect the balance of the purchase money due upon the Fehlinger contract, and we may concede that they

had the discretionary power to accept a surrender of the contract, although that might have the effect of discharging the vendee from payment of the balance of the purchase money; but, when it comes, in addition, to binding the estate by a contract to pay a debt of a vendee, which the estate was under no legal or moral obligation to pay, a serious question arises. Was this necessary or convenient in the execution of the will of the testator? We think not. Annexed to the contract was a confession of judgment, which gave them the means of recovering the land itself, or the balance of the purchase money by a sale of the land, notwithstanding the mechanics' lien. On the face of the case, then, it is plain that it was neither necessary nor convenient for the executors to agree to pay this debt, in order to avoid tedious and expensive litigation, or for any other purpose.

It is suggested that the beneficiaries may have given the defendant parol authority to make the contract. We cannot agree with the defendant's counsel in his contention that this is to be presumed. If such was the fact, and if that fact would of itself discharge the defendant from personal liability to the plaintiff, it was the defendant's duty to show it. Prima facie, his authority to bind the other beneficiaries was derived from the will, and there is no evidence that he had any other or greater authority than was conferred by the will, either expressly or by necessary implication.

After a careful consideration of the exceptions we can discover no error in the referee's conclusion that the defendant's contract was in excess of his powers under the will, or in his refusal to find that the defendant made the promise in a representative capacity. The mere fact of want of authority in a trustee to bind the estate, will not make him personally liable in cases of executory contract where the facts show that no such liability was intended by either of the parties: Perry on Trusts, 437. The fact relied on by the defendant is that the assignment was made to him as trustee, and if he had authority under the will, as executor to bind the estate generally, or as trustee to bind the other beneficiaries, this fact might possibly justify the inference that both parties understood that he made the promise in one or the other of those capacities, but as he did not have such authority we do not think it necessary to

Opinion of Court below.

infer an intention to contract otherwise than according to the terms of the promise; namely, personally.

The third question raised by the exceptions is whether the contract is within the statute of frauds? The plaintiffs' counsel suggests that the statute does not apply, because the promise was not made to the creditor and the suit stands in the name of Fehlinger, the promisee. The English rule is thus stated: "The promise must be made to the creditor; i. e. to the person to whom another is already or is thereafter to become liable:" DeColyar on Guaranties, 110. This was first decided in Eastwood v. Kenyon, 11 A. & E. 445. " Another important exception to the statute of frauds," says an American writer, "is the case of a promise to pay another's debt, made, not to the creditor, but to that other; this engagement, both in England and America, is, with little dissent, regarded as not being a guaranty within the terms of the statute:" 1 Reed on Stat. of Frauds, § 76. In King v. Shoemaker, 1 Pears. 206, Judge Pearson cites a large number of cases to show that this is the American rule. The promise was to the debtor, but the suit was brought in the name of the creditor. The Supreme Court in reversing the judgment said: "The decided weight of authority and of reason declares that though such a contract is valid between the immediate parties to it, it is void as a contract in favor of the creditors of one of them, unless they as part of the arrangement give up their original claims and accept the new contract: Shoemaker v. King, 40 Pa. 107.

It will be seen from the above citations that the proposition of the plaintiff's counsel is supported by a respectable array of authorities. But this proposition, like most others relating to the statute of frauds, has not gone without question, and we cannot say that it is settled in Pennsylvania that the mere fact that the promise was made to the debtor is, of itself, decisive. See American notes to Birkmyr v. Darnell, 1 Sm. L. C. 458–499. Be that as it may, we think it entirely safe to say, that where there is a transfer of a fund to the promisor for the payment of the debt, he is liable on his verbal promise made to the owner of the fund; or, if property charged with the payment of the debt be transferred to him on his promise to the vendor to pay the debt, he is liable: Townsend v. Long, 77 Pa. 143; Maule v. Bucknell, 50 Pa. 39; Dock v. Boyd, 93 Pa.

92; Justice v. Tallman, 86 Pa. 147; Arnold v. Stedman, 45 Pa. 186. Where the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute: Nugent v. Wolfe, 111 Pa. 471.

It is suggested that this case is not governed by the principles above stated, because the equitable title of Fehlinger was assigned to him as trustee, and not personally. We do not think this a valid ground for distinguishing the case, for the reason that he held the legal title in trust for himself and his brothers and sisters; he was a joint owner with them, and therefore had a personal interest and purpose to serve in procuring a surrender of the plaintiff's title.

We have thus far considered the case with reference to that clause of the statute relating to parol guaranties; it may be proper to add a word regarding the effect of the clause relating to promises by executors and administrators. It cannot be contended that the statute applies to every promise aliunde made by one who happened to be an executor or administrator, and the question has been discussed whether it applies to an executor's promise to pay a debt of the estate incurred by him. The better opinion is that it may. One writer has stated the rule thus: "The statute of frauds includes all liabilities resting upon the executor or administrator strictly in his representative character, and which, but for the promise, he would have been liable to discharge only in the due course of the administration of the estate; but not those which were originally incurred by him in consequence of some act of his own, although it was an official act:" Throop, Validity of Verbal Agreements, § 39. Another has suggested that this is the rule: "All engagements of an administrator for the benefit of the estate he represents are within the statute, except for liabilities incurred fraudulently or carelessly by the administrator; for matters arising since the death of the decedent; or, generally, where he is only primarily liable, having a right to ultimate reimbursement out of the estate:" 1 Reed on Stat. of Frauds, §§ 154–171. According to either statement of the rule, we think it results from what has heretofore been said that the defendant's promise is not within the statute.

The exceptions are overruled, the report of the referee is

Opinion of the Court.

confirmed, and judgment is entered thereon in favor of the plaintiff for the sum of $284.89, with interest from January 29, 1889.

—Thereupon the defendant took this appeal, assigning specifically the dismissal of his exceptions, the confirmation of the referee's report, and the entry of judgment for the plaintiffs for error.

*Mr. F. M. Nichols*, for the appellant.

Counsel cited: (1) Whitney v. Wyman, 101 U. S. 392; Nash v. Towne, 5 Wall. 689; Edwards v. Goldsmith, 16 Pa. 43. (2) Petriken v. Baldy, 7 W. & S. 429; Haverly v. Mercur, 78 Pa. 257. (3) Plumb v. Milk, 19 Barb. 74; Walker v. Bank, 9 N. Y. 589; Ingles's Est., 76 Pa. 430; Wagner's App., 38 Pa. 122. (4) Newman v. Sylvester, 42 Ind. 106; Dougherty v. Hunter, 54 Pa. 380; Filby v. Miller, 25 Pa. 264; Berger's App., 96 Pa. 443; Kelsey v. Bank, 69 Pa. 426.

*Mr. S. J. Strauss* (with him *Mr. George K. Powell*), for the appellees.

Counsel cited: Clyde v. Clyde, 1 Y. 92; Ewing v. Tees, 1 Binn. 450; Stoudt v. Hine, 45 Pa. 30; Maule v. Bucknell, 50 Pa. 52; Arnold v. Stedman, 45 Pa. 186; Landis v. Royer, 59 Pa. 95; Townsend v. Long, 77 Pa. 143; Dock v. Boyd, 93 Pa. 92; Clymer v. De Young, 54 Pa. 118; Taylor v. Preston, 79 Pa. 436; Birkmyr v. Darnell, 1 Sm. L. C. 317.

PER CURIAM:

This case has been sufficiently discussed by the learned judge of the court below. We affirm the judgment for the reasons given by him.

Judgment affirmed.