## BENJ. RIEGELMAN v. DANIEL FOCHT.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 3, 1891—Decided April 6, 1891.
[To be reported.]

A parol promise by a third person, that if the promisee will forbear eviction of his tenant for non-payment of rent, and permit the tenant to occupy the premises for the remainder of the term, the promisor will pay the rent, is within the operation of the statute of frauds and perjuries and unenforceable: § 1, act of April 26, 1855, P. L. 308 ;—Merriman v. McManus, 102 Pa. 102, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 194 January Term 1891, Sup. Ct.; court below, No. 18 January Term 1886, C. P.

On December 19, 1885, there was entered in the court below, by appeal from the judgment of a justice of the peace, an action brought by Benjamin Riegelman against Daniel Focht, upon an alleged contract to pay rent for certain premises in Lenhartsville, Berks county. The defendant pleaded, non-assumpsit.

At the trial on September 22, 1890, the following facts were shown:

In 1884, the plaintiff, the owner of a hotel property in Lenhartsville, rented it by a verbal agreement to James S. Focht, a son of the defendant, for the term of one year from April 1, 1884. The testimony was conflicting as to whether the rental agreed upon was $200 or $150. James S. Focht obtained a hotel license and went into the occupancy of the premises. On or prior to September 1, 1884, he paid $75 on account of the rent. The plaintiff testified that all the rent was to have been paid or secured in advance, and testified, further, in part as follows:

" Q. Will you tell us whether or not you made an agreement at any time with Daniel Focht, the defendant in this case, about the payment of the rent of the hotel?"

Mr. Rothermel: This is objected to, unless it be shown that the alleged agreement was put in writing, or that the new agreement was made in pursuance of a consideration. The testimony is incompetent and immaterial.

Mr. Marx: The plaintiff proposes to show a new agreement.

By the court: Objection overruled; exception.[1]

" A. James Focht went on and put the telephone in the house; he did not pay any rent, nor did he give bail. Then Dan Focht came there, the old man, and said to me, ' Jim is doing a good business,' and that I should let him live on the premises, that he, Daniel Focht, would pay the rent either monthly or quarterly, as I desired it. But he did not pay it either monthly or quarterly. That is all I have to say or know. Q. Did you at that time threaten to evict James Focht? A. I said if he did not pay his rent or give bail, I would evict him. Q. What was Daniel Focht's answer at that time? A. Dan Focht said, then, I should leave him remain and that he would pay the rent monthly or quarterly, as I desired. Q. What did he do then? A. He remained there until the end of the year. Q. What did you say to Daniel Focht? A. Then I left him live there. Upon the old man's promises I left him live there. I cannot answer what answer I gave; it is so long ago, I have forgotten it. Q. Was any one present at the time you made this contract? A. Yes; I took Isaac Becker along as a witness. Q. Was he present at the time you made the agreement?

Statement of Facts.

A. Yes; we talked it over, and then I called Isaac Becker and told him we had made such a bargain. Q. Did you tell him what bargain you had made? A. I cannot say what I told him; it is too long. Q. Was Mr. Daniel Focht present when you stated the contract to Becker? A. Yes, sir; I and Focht stood together, and then Becker came there."

By Mr. Schaeffer: " Q. What was said at that time? A. I cannot say that; perhaps I told Becker that we made such a contract. Q. Have you any recollection of what you said, or anything at all that you said to Becker? A. Yes; I told Becker to come there, and that we had made such a bargain. Q. Can you recollect what you said to Becker? A. I cannot say that any more; it is too long."

By the court: " Q. Did you repeat the bargain to Becker? A. I will not say that I did, but perhaps I did. Q. You cannot recollect any more? A. I may have told the bargain to Becker, but I cannot recollect it any more, and what I do not remember I will not say, it is so long ago." . . . . .

Cross-examined: By Mr. Rothermel: " Q. When was this contract made with Daniel Focht? A. That I told you this forenoon, that I could not say the time when it was. Q. Was it in September? A. That I cannot say, but it was about that time; what I do not know I will not say. . . . . Q. You leased it to James Focht in the fall? A. No, in the spring, and Jim did not come up to the contract, and then I rented it to the old man in the summer. . . . . Q. How much did James Focht pay you on this rent? A. Jim Focht paid $75, and $125 the old man owes me yet. Q. The $75 were paid after you had talked to the old man about it? A. No. Q. State when they were paid? A. It is too long ago, I cannot any more. Q. Can you swear that it was before the old gentleman had this conversation with you? A. Yes, sir; he paid me that rent before. After I had a contract with the old man, then Jim did not owe me anything any more. Q. Then how much rent was due when you said you would put James S. Focht out if the old gentleman would not pay the rent? A. It was all due; it was due before he moved in. Q. Is it not a fact that there was not more than $75 rent due when you and the old gentleman had that conversation? A. It was all due in the spring already. I cannot tell you how much was due, because it was talked that way

that he was to pay the rent in advance or give bail. Now, what was due? Q. How much was due when you say Dan Focht made this bargain? A. I cannot tell you just. He said I should let Jim live there, 'he is doing a good business; I will pay the rent.' What could I say? Q. Then James S. Focht paid you $75 and still owes you $125? A. Yes, sir, Jim; but he did not pay it on the bargain, and he owes me $125 yet. Q. Jim Focht paid you $75 and owes you $125; is that so or not? A. I rented it to him for $200. Now, it is easy to know how it is. . . . . Q. You did not state an amount to Daniel Focht when you talked about this? A. It was not necessary to state any amount. Dan Focht said, 'let Jim remain, he is doing a good business, I will pay the rent.' . . . . . Q. Jim Focht paid you $75, and owes you $125 yet? A. Yes. The old man owes it to me, not Jim any more."

Isaac Becker testified for the plaintiff, in part as follows: "Q. What was the agreement between the parties, what was said and done? A. All I know is this: I was there in the store next to Riegelman's hotel. Then Riegelman and old Mr. Focht were standing at the rail where the horses were tied on in front of the hotel. Then Riegelman said, 'Becker, come up here.' Then Riegelman said, 'We have now a contract that James Focht shall remain living here.' Then Riegelman said, I am not positive whether Riegelman said, 'Dan Focht stands for the rent,' or, 'Dan Focht will pay the rent.' I am not positive sure which of the two he said. Q. Was Daniel Focht present at the time? A. Daniel Focht was standing aside of us."

Mr. Rothermel: Defendant renews his objection to this part of the testimony, and moves the court to strike it out.

By the court: Motion overruled; exception.[2]

The defendant denied having made any agreement with the plaintiff to pay the rent in question.

At the close of the testimony, the court, ERMENTROUT, P. J., after submitting to the jury the question how much rent was due to the plaintiff, and stating the substance of the testimony of the plaintiff and Isaac Becker, gave further instructions in part as follows:

It is upon that evidence the plaintiff seeks to recover in

*Charge of Court below.*

this case. [If the jury under the evidence should find that, in consideration of a promise made by Riegelman to Focht that he, Riegelman, would not eject James Focht from the premises, if he, Daniel Focht, would pay the rent,—if they would find that to be the state of facts,—that, in law, would amount to a contract by and between Daniel Focht and the plaintiff, upon which the defendant Daniel Focht would be liable, and there could be a recovery in this case. But before there can be any recovery, you must find that there was such a contract;] [3] that they talked about the fact of this eviction, and that Daniel Focht promised this plaintiff that if he would not put James out, but would leave him remain, he, Daniel Focht, would pay this rent; and that Riegelman accepted that contract, and that upon the faith of it he allowed James Focht to remain, looking no longer to James Focht for his money, but to Daniel Focht. In other words, the jury must find that Daniel Focht really made a new contract upon that day with this plaintiff, that James Focht should remain and that he, Daniel Focht, would pay the rent to the plaintiff. To bring about a recovery, the old contract is in point of fact gone. Unless there was a new contract made by and between the plaintiff and Daniel Focht, there can be no recovery. And that contract must have been to pay the rent,—not to go bail for the rent, but to pay it. In other words, Daniel Focht puts himself in the place of his son; takes his place, and the property is rented to him, and this man, James Focht, is allowed to remain upon the property by virtue of the contract and promise to pay made by and between Daniel Focht and the plaintiff.

What now does the defendant say? The defendant says two things: First, that there was no promise; second, that even if there had been a promise, the statute of frauds would free him from liability, because the contract which was made was not in writing. . . . .

If the jury should find from this testimony that the words simply were that Daniel Focht would stand for the rent, that would be a suretyship, that would be a bailship, and there can be no recovery, because the promise was not reduced to writing.

Let me recapitulate all the points in this case, so that you may clearly pass upon them. In the first place ascertain what rent is due. Did he rent for $200 or $150. From whatever

Arguments.

amount you find the property to have rented for, deduct $75, and on the balance calculate interest from October, 1884, up to the present date. That is the amount due. The next question is did Daniel Focht obligate himself to pay that rent or not? The plaintiff's theory is that Daniel Focht and Riegelman made a contract that if James Focht was permitted to remain upon the premises, he, Daniel Focht, would pay the rent. That is, he is put really in the position of the tenant. They no longer, under such a state of facts, look to James Focht, but directly to Daniel Focht. Now, if the facts will warrant that interpretation, and if you find that that was the contract, then the plaintiff would be entitled to recover. But if the facts would simply warrant a bailship or suretyship, then he cannot recover, because the statute of frauds says the promise should be in writing. And if the other theory of the defendant is correct, that he made no promise at all, there could also be no recovery. These are the facts upon which you have to pass.

—The jury returned a verdict for the plaintiff for $99.65. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The admission of plaintiff's offer.[1]

2. The refusal of defendant's motion.[2]

3. The part of the charge embraced in [ ][3]

*Mr. John H. Rothermel,* for the appellant:

The only question is whether the alleged promise of the defendant falls within the statute of frauds, § 1, act of April 26, 1855, P. L. 308. A careful reading of the plaintiff's testimony plainly shows that it does; that there was a mere forbearance on the part of the plaintiff to evict James S. Focht, while the right to sue him for the rent remained, and as there was a continued liability upon the part of the debtor, the alleged promise was only collateral. Nor does Becker's testimony show more than a suretyship or a promise to pay the rent for James Focht. Therefore, no recovery could be had, the promise not having been reduced to writing: Maule v. Bucknell, 50 Pa. 53; Addison on Cont., § 210; Brown on Stat. of F., note to § 212; 9 Am. & Eng. Encyc. of Law, 73; Eshleman v. Harnish, 76 Pa. 103; Hearing v. Dittman, 8 Phila. 307; Malone v. Keener, 44 Pa. 107; Birkmyr v. Darnell, 1 Sm. L. C., 8th ed., 459, note

Arguments.

by Judge Hare; Allshouse v. Ramsay, 6 Wh. 331; Watson v. Randall, 20 Wend. 201; Dexter v. Blanchard, 11 Allen 365; Nugent v. Wolfe, 111 Pa. 471. The statute should be enforced according to its true intent and meaning: Nugent v. Wolfe, supra.

*Mr. D. N. Schaeffer* (with him *Mr. J. H. Marx*), for the appellee:

1. In view of the instructions given by the court, it is established by the verdict that the contract between the plaintiff and the defendant produced a change of relation, substituting the defendant in the place of his son, and that the son's liability to pay rent ceased with the making of the contract. The only question then is, whether there was sufficient evidence to warrant the finding of the jury: Eshleman v. Harnish, 76 Pa. 103; Maule v. Bucknell, 50 Pa. 51. The plaintiff testified: "I rented it to the old man in the summer. . . . . After I had a contract with the old man, then Jim did not owe me anything any more. . . . . The old man owes it to me, not Jim any more." Becker testified that the plaintiff said, in the defendant's presence: "We have now a contract that James Focht shall remain living here," and "Dan Focht stands for the rent," or "Dan Focht will pay the rent." This testimony fully warrants the finding of the jury, by which the contract was determined to be that James Focht should be permitted to remain, and that the defendant should pay the rent, becoming liable therefor as tenant in the place of James.

2. Having made the rent his own debt, and having gotten what he agreed to pay for, the control of the premises for the unexpired term, the defendant is liable upon his promise and the statute of frauds does not apply: Merriman v. McManus, 102 Pa. 102; Taylor v. Preston, 79 Pa. 436; Merriman v. Liggett, 1 W. N. 379; Lefevre v. Bank, 2 W. N. 174; Weyand v. Crichfield, 3 Gr. 113; Warnick v. Grosholz, 3 Gr. 234; Addison on Cont., § 210. The proof of the contract resting on parol testimony, its sufficiency was for the jury, and it would have been error to withdraw it from them by peremptory instructions: Taylor v. Preston, 79 Pa. 436. The consideration disclosed by the testimony was not forbearance to evict, but the consent of the plaintiff to forego his conceded right to occupy the premises

by himself for another tenant, and that James Focht should occupy them to the end of the term. But the consideration is immaterial in the construction of the statute ; the test is applied to the promise, and if that does not bring the contract within the statute, the consideration never can : Maule v. Bucknell, 50 Pa. 52.

OPINION, MR. JUSTICE GREEN :

In any aspect of the testimony in this case, the promise upon which the suit was brought was a verbal promise to pay the debt of another, and therefore void under the statute of frauds.

The original letting of the premises in question was admittedly made by the plaintiff to James S. Focht. Daniel Focht, the defendant, was in no sense a party to that contract. The letting was for one year, and under it James S. Focht moved into the house, and continued to live there until the end of the term. He paid part of the rent, $75, and it is not claimed by the plaintiff, nor is it the fact, that the plaintiff at any time released him from his obligation to pay the remainder of the rent. On the contrary, the plaintiff testified that "Jim," his tenant, still owed him the $125 balance of the rent at the trial. He was asked : " Q. Then James S. Focht paid you $75, and still owes you $125 ?   A. Yes, sir, Jim ; but he did not pay it on the bargain, and he owes me $125 yet.   Q. Jim Focht paid you $75, and owes you $125, is that so or not ?   A. I rented it to him for $200.   Now, it is easy to know how it is." The plaintiff's own testimony as to the defendant's promise was that he asked him, the plaintiff, to let Jim remain on the premises, and that he, the defendant, said he would pay the rent monthly or quarterly, as he desired.   " Q. Did you at that time threaten to evict James Focht ?   A. I said if he did not pay his rent or give bail I would evict him.   Q. What was Daniel Focht's answer at that time ?   A. Dan Focht said, then, I should leave him remain, and that he would pay the rent monthly or quarterly, as I desired.   Q. What did he do then ?   A. He remained there till the end of the year.   Q. What did you say to Daniel Focht ? A. Then I left him live there.   Upon the old man's promise I left him live there.   I cannot answer what answer I gave.   It is so long ago I have forgotten it." Thus it will be seen that the whole of the plaintiff's case, according to his own testimony,

was that he would forbear an eviction of the tenant and let him continue to live on the premises to the end of the term, upon the defendent's promise to pay the rent.

It is really too plain for argument that this is not the creation of a new and independent debt of the promisor alone, but a mere promise to pay the debt of the tenant, who was to continue to occupy the premises until the end of the term; and this is precisely what he did. No change took place in his relation to the plaintiff as his tenant. He still continued liable for the accruing rent, and the plaintiff so testified. Of course, no relation of tenancy between the plaintiff and the defendant ever arose, nor was there the slightest pretence that it did, or that anything was said between them on that subject. The defendant received no consideration of any kind for his promise, except such as would arise from the fact that his son was permitted to remain on the premises. There is no testimony in the case which, in any degree, improves that of the plaintiff himself. The debt of the tenant remained; there was no extinguishment of it, and no substitution of any other debt in its place; there was nothing but the collateral, verbal promise of the defendant to pay it; and, under all the authorities, such a promise is within the operation of the statute of frauds and perjuries.

Said Mr. Justice STRONG in Maule v. Bucknell, 50 Pa. 93: "In note (*l*) to Forth v. Stanton, 1 Wms.' Saunders, 211*b*, it is said: 'The question whether each particular case comes within the clause of the statute or not depends, not on the consideration for the promise, but on the fact of the original party remaining liable, coupled with the absence of any liability on the part of the defendant or his property, except such as arises from his express promise.' The doctrine of this note is supported by very many cases, and it is in harmony with the words of the statute." In Nugent v. Wolfe, 111 Pa. 471, our Brother STERRETT said: "As a general rule, when the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before, or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing." In the note to Birkmyr v Darnell, 1 Sm. L. C., 8th ed., 459, it is

Opinion of the Court.

said : " It is universally conceded that forbearance to proceed against the estate or person of the debtor, though a good consideration, is insufficient to avoid the statute ; " citing many cases in support of the principle.   The doctrine is well stated in 9 Amer. & Eng. Encyc. of Law, 73, as follows : " If the evidence shows that the party who receives and profits by the consideration is liable and may be sued for the debt in assumpsit, or that credit was given primarily to him in any form, the case will fall within the statute, and no recovery can be had on a collateral promise, unless reduced to writing, or based upon a distinct and independent consideration moving to the promisor."

It is unnecessary to multiply authorities upon these familiar principles, which are directly applicable to the facts of this case.   The case of Merriman v. McManus, 102 Pa. 102, which is cited by the appellee, is not at all in point, as its facts are entirely different.   There the work under the original contract had ceased because of the insolvency of the party who was liable originally.   But it was essential that the work should proceed, and the parties interested in the completion of the work made a new and independent agreement with the plaintiff to go on and finish the work, and they would pay him for it.   The work was thereafter done, and, of course, the defendants were held bound to pay for the work subsequently done under their contract to pay for it.   We are of opinion that the learned court below was in error in the portion of the charge embraced in the third assignment of error.   It was, in effect, a direction that, if the defendant's promise to pay was based upon the plaintiff's agreement not to eject the tenant, the plaintiff might recover.   We do not so understand the law.   The assignments of error are all sustained.

Judgment reversed.