# Emanuel Gable, Appellant, *v.* Herman Graybill, Appellee.

*Statute of frauds—Original or collateral undertaking—Color of surrounding facts.*

The question whether a given undertaking is within our statute of frauds cannot be determined by the words alone in which it is made, but the words must be construed in the light of the pertinent facts which color their utterance. Hence it is that the same words have been held to create, in different cases, an original and a collateral undertaking. There is no irreconcilable conflict between the authorities.

*Burden of proof upon plaintiff.*

It is also well settled that when a change of relation is alleged for the purpose of taking the case out of the statute, it lies upon the plaintiff to prove it by clear and indubitable proof.

*Effect of consideration as imputing original undertaking.*

The question of a consideration as imputing a novation or original undertaking, is important only where there was some independent liability of the promisor or his property, independent of the express promise or the assumption by him of the superior liability as between him and the original debtor, or some advantage resulting to the promisor from the plaintiff's action for which the promise is given.

*The case at bar falls within the statute.*

If, therefore, a third person should say to an employee of another, "keep on with your work, and I will see you paid," the language, without more, constitutes a promise to see that the principal performed his obligation, and, not being in writing, falls within the statute of frauds.

Argued Nov. 18, 1895. Appeal No. 15, Nov. T., 1895, by plaintiff, from judgment of C. P. of Lancaster Co., Aug. T., 1895, No. 140. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed.

This case came before the court below on an appeal from judgment of a justice for $132.80 in favor of plaintiff on an action in assumpsit. Defendant pleaded the general issue. The court gave binding instructions in favor of defendant, which were assigned as error. The facts are fully set out in the opinion of the Superior Court.

*Error assigned* was binding instructions in favor of defendant.

*W. R. Brinton,* for appellant.—Defendant promised to do just what the law compels an employer to do, to wit, pay his laborers.

A promise to answer for one's own debt is obviously not within the statute: Taylor v. Preston, 79 Pa. 436.

Not even if thereby the debt of a third person be incidentally guaranteed: Taylor v. Preston, 79 Pa. 436.

Obviously the statute does not apply to the promise of a partner to pay the debt of a firm of which he is a member: Conges v. Cotton, 37 Ark. 286; Weatherly v. Hardman, 6⁵ Ga. 592.

The statute of frauds does not require the promise of a defendant to be in writing where it is in effect to pay his own debt, though that of a third person be incidentally guaranteed; it applies to the mere promise to become responsible, but not to actual obligations: Malone v. Keener, 44 Pa. 107.

The employment of plaintiff by defendant was, clearly, a direct employment, an original undertaking, and in no wise a promise to pay the debt of another (Kutz), or a promise collateral to the continued liability of Kutz.

"It is undoubtedly true that a promise to pay for the debt or default of another is not within the statute, unless it be collateral to the continued liability of the originally debtor:" Maule v. Bucknell, 50 Pa. 52.

"Where the leading object of the promise or agreement is to become guarantor or surety to the promise for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after or at the time of the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promise is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute: Nugent v. Wolfe, 111 Pa. 471.

This principle was affirmed and followed in Fehlinger v. Wood, 134 Pa. 517; Riegelman v. Focht, 141 Pa. 380; Elkin v. Timlin, 151 Pa. 491.

The case of Merriman v. McManus, 102 Pa. 102, is on all fours with this case. See also Jefferson Co. v. Sagle, 66 Pa. 202, and Hibbs v. Woodward, 15 W. N. 338.

*A. S. Hershey*, for appellee.— " Though a verbal contract is valid between the immediate parties to it, it is void as a contract in favor of the creditors of the parties, unless they, as a part of the arrangement, give up their original claims and accept the new contract instead.   Without this it is void when expressly made to the creditors, and, therefore, it cannot be implied as made to them.   While the old debt remains, the new contract cannot be substituted, but only is a collateral one —a promise to pay the debt of another, which is forbidden by the statute as a cause of action: Shoemaker v. King, 40 Pa. 107; Gheen's Estate, 7 W. N. C. 66.

On a judgment on nonsuit the court is better able to judge of the force of the evidence: Haverly v. Mercur, 78 Pa. 257.

A mere scintilla is not sufficient to send the case to a jury— and the court should protest against the prejudice of successive juries finding against the charge of the court: Express Co. v. Wile, 64 Pa. 205.

OPINION BY RICE, P. J., December 9, 1895:

The question whether the defendant's promise is within our statute of frauds (section 1, act of April 26, 1855, P. L. 308) cannot be determined by the words alone in which it was made. There are cases where the words, " I will see you paid," have been construed, in the light of the pertinent facts, to be an original undertaking, and other cases where the same words have been construed to be a collateral undertaking and within the statute.   There is no irreconcilable conflict between these cases. The words are not unimportant in ascertaining the intent, as is shown by the illustration quoted from Nelson v. Boynton, 44 Mass. 396–400, by the present chief justice, in Nugent v. Wolfe, 111 Pa. 471; but the circumstances of the transaction, and not the words alone, determine whether the promise is within the statute.   Nor is the fact that there was a consideration for the promise decisive.   " A new consideration for a new promise is indispensable without the statute; and if a new consideration is all that is needed to give validity to a promise to pay the debt of another, the statute amounts to nothing: " STRONG, J., in Maul v. Bucknell, 50 Pa. 39.   There are instances, it is true, where the consideration is of importance, as, for example, where it is either a transfer to the promisor of the creditor's claim,

making the transaction a purchase, or where it is a transfer to
the promisor of a fund for the payment of the debt, or property
or securities charged with its payment. This principle was
applied in Fehlinger v. Wood, 134 Pa. 517, a case cited by the
plaintiff's counsel, and in other cases that might be cited, but
it has no application here. "The question whether each par-
ticular case comes within the clause of the statute or not de-
pends not on the consideration for the promise, but on the fact
of the original party remaining liable, coupled with the absence
of any liability on the part of the defendant, except such as
arises from his express promise:" Forth v. Stanton, Wm. Saun-
ders, 211, note. The doctrine of this note has been quoted
with approval in very many cases, and some of them late ones:
Nugent v. Wolfe, 111 Pa. 471; Riegelman v. Focht, 141 Pa.
380. In Maul v. Bucknell, supra, Mr. Justice STRONG said:
"It is incumbent, then, upon him who would enforce a mere
verbal promise of one to answer for the debt or default of an-
other, if the original debt remains, to show that his case is one
of those that are recognized as exceptional. And it will be
found, after examination, that, in nearly all the decisions in
which it has been held that such a promise is not within the
statute, there was some liability of the promisor or his prop-
erty independent of his express promise, or that he had become
the actual debtor, so as that, between him and the original
debtor, the superior liability was his. In such cases the con-
sideration for the new promise is regarded as material." If,
therefore, a third person should say to an employee of another,
"Keep on with your work, and I will see you paid," the lan-
guage, without more, would, in ordinary meaning, as well as
in legal effect, constitute a promise to see that the principal
performed his obligation, and not being in writing would be
within the statute. The case of Lewis v. Lumber Manf. Co.,
156 Pa. 217, and Haverly v. Mercur, 78 Pa. 257, are in point,
and the case of Riegelman v. Focht is analogous. That the
present case does not differ in essential particulars can be best
shown by a brief recapitulation of the facts.

The plaintiff and William Burke were working in the cigar
factory of Allen Kutz. The defendant had advanced the money
to Kutz to go into business, and was surety on his United States
revenue bond. There was evidence that Kutz neglected his

business, and early on Saturday morning left his home. On the following Monday morning the workmen wanted money. Kutz had not returned. Mrs. Kutz went to see the defendant, and shortly afterwards he came to the shop. The testimony of Burke as to what occurred in the shop is as follows: "One morning I came to the shop to work, and Mrs. Kutz told me Al. had put on three white shirts and gone away, and she did not know where till he came back; I told her I needed some money, and she went down to Graybill's, and after she came back, Graybill came up to the shop and said, if we wanted to keep on working, he would see that we got paid; that he and Mrs. Kutz were going to run the business. Q. Repeat that again—what occurred? A. He came in the shop and said, if we wanted to keep on working, he will see that we get paid; he was going to take everything out of Al.'s hands, and him and Mrs. Kutz were going to run the business." The defendant denies having made the alleged promise, but as the court gave binding instructions to find for the defendant, the question before us is as to the validity of the promise, if he made it. As a matter of fact, the business was not taken out of Kutz's hands. He returned on the same day, according to the testimony introduced by the defendant, and certainly within a very few days, according to that of the plaintiff, and from that time on the business appears to have been conducted as before. The execution which the defendant issued was not pressed, and after a very careful examination, we feel warranted in saying that there is no evidence from which a jury could properly find that the defendant had any interest in the business or its proceeds, except as a creditor of Kutz, or took any control of it. About a year after the alleged promise, the plaintiff left the employ of Kutz, and nearly six years after that brought this suit before a justice of the peace, against "Allen Kutz as principal and Herman Graybill as security of Allen Kutz," to recover an unpaid balance of wages earned while thus in the employ of Kutz. After the case was appealed, the record was amended and a statement was filed. It is a significant fact that Kutz on several occasions paid the plaintiff on account of his wages; that the latter made no demand on the defendant until about the time he brought suit, and that, in the meantime, he paid the

defendant money from time to time on account of lumber and coal bought from him.

Inasmuch as the allowance of the amendment is not complained of, it is perhaps of no importance that the suit was originally brought against the defendant as surety. But the other facts may be referred to properly, because they tend to show (1) the construction which the plaintiff put upon the alleged agreement—a construction inconsistent with his present claim that the defendant became the principal debtor; (2) that there was no change in the relation of employer and employee existing between Kutz and the plaintiff. The plaintiff continued to work, not only in Kutz's shop, but for Kutz, and the latter continued to pay him for his services as before. The facts of the case plainly distinguish it from Merriman v. McManus, 102 Pa. 102. There can be no question that Kutz's liability continued; that, as between him and the defendant, "the superior liability was his;" that the plaintiff primarily looked to him for his pay, and only looked to the defendant for that part of his wages which Kutz failed to pay. In the case cited the original contract under which the plaintiff began the work was abandoned, and the only persons interested in the finishing of the work were the defendants, who would receive an immediate tangible benefit thereby. The decision was put upon the ground very distinctly stated by GORDON, J., "that the defendants agreed to pay for what they got and only for what they got, and that because they would get what they wanted on no other terms." The case of Jefferson Co. v. Slagle, 66 Pa. 202, was decided upon the same ground.

We do not think that the expression of a purpose by the defendant to take charge of the business, or to take it out of Kutz's hands, added anything to the undertaking. It was no part of the promise. That it was an additional inducement to the plaintiff may well be. He may have been led to expect that a change in the business would be made soon, and then he would have a sure paymaster; but the question is not whether the inducements held out to him were a sufficient consideration to support the promise, but whether the promise, in so far as it related to, and was intended and understood to relate to, the work done by him before the change in proprietorship took place, or after Kutz resumed control of his business, was a

promise "to answer for the debt or default of another." Clearly, the wages thus earned were Kutz's debt. But there is a class of cases which hold that "where the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute." This principle was recognized in Nugent v. Wolfe, 111 Pa. 471–480, but the case was held not to be within it. The principle has been said to apply "when the promisor has for his object a benefit accruing to himself, in which the original debtor has no interest, and from which the latter derives no advantage;" "where the promisor has a leading purpose of personal advantage;" "where he has for his object a benefit which he did not before enjoy, accruing immediately to himself." It is ably discussed, and the authorities are collected in 1 Reed on Stat. of Frauds. In Ames v. Foster, 106 Mass. 402, the promise is said not to be within the statute "where, upon the whole transaction, the fair inference is that the leading object or purpose and the effect of the transaction was the purchase or acquisition by the promisor from the promisee of some property, lien or benefit which he did not before possess but which would inure to him by reason of his promise, so that the debt for which he is liable may fairly be deemed to be a debt of his own contracted in such purchase or acquisition." This clear and comprehensive statement of the principle is in harmony with the best considered cases. But so long as Kutz remained the owner and in control of the business, what interest or purpose of the defendant was to be subserved by inducing the plaintiff to continue at work; what benefit or advantage would or could accrue immediately to him, by reason of his promise, which he did not before enjoy? Manifestly his rights as a creditor of Kutz gave him no such interest in the profits or proceeds of the business as would bring his promise within the principle above stated. The benefit or advantage accrued immediately to Kutz, and upon a fair view of the whole transaction the "leading purpose" of the promise could have been no other than to guarantee the payment of wages for which Kutz would be primarily liable. Where such is the case "the agreement, whether made before or after or at the time of the promise of the principal, is within the statute and not binding unless evidenced by writing:" Nugent v. Wolfe, *supra.*

The learned counsel for the appellant assumes that the defendant said that he and Mrs. Kutz had taken the business out of Kutz's hands and were then conducting it. From this he argues very plausibly, and with much force and earnestness, that there was a new employment by the defendant, and that there was no continuing liability on the part of Kutz. As we have suggested, this is not the interpretation which Kutz and the plaintiff put upon the transaction by their acts. We are not prepared to say, however, that if the plaintiff had continued at work, relying exclusively upon the defendant's promise and the representation that the business had been taken out of Kutz's hands and was the defendant's, the latter would be permitted to show that his representation was untrue in order to enable him to escape from liability as an employer. We need not discuss that question, because we do not think it is fairly raised. When Kutz returned and resumed control, the relation of employer and employee between him and the plaintiff was restored, if it was ever broken, and all their dealings during the year which followed were entirely inconsistent with a claim that the plaintiff supposed that the defendant was his employer. Furthermore, the testimony, twice repeated, in answer to specific questions as to the precise language used, is as we have quoted it. The argument is based on an affirmative answer, to a leading question in the witness' redirect examination, in which the words were put into his mouth. But if the statute is to be construed and applied with the slightest reference to the purposes for which it was enacted, the plaintiff's case could not be made out by testimony which would require the jury to guess what the witness intended to say the promise was. Even before the statute requiring written evidence of guaranty, the oral proof was closely scrutinized: Petriken v. Baldy, 7 W. & S. 430. And when a change of relation is alleged for the purpose of taking a case out of the statute, it lies upon the plaintiff to prove it " by clear and indubitable testimony: " Eshleman v. Harnish, 76 Pa. 97. The evidence to change an existing contract relation between the plaintiff and a third party, and to prove a promise by the defendant to pay the debt of another as a new and original undertaking, and not a contract of suretyship, must be clear and satisfactory: Haverley v. Mercur, 78 Pa. 257.

Construing the alleged promise in the light of all the circumstances of the transaction, we are of opinion that the learned judge correctly held that it was within the statute of frauds, and that the plaintiff could not recover.

Judgment affirmed.